Whaley, Chief Justice,
delivered the opinion of the court:
These cases were argued and submitted together on an agreed statement of facts, which, insofar as material, is adopted as the special findings of the court. The amount of judgment will be for later determination. There are no stipulations as to the amount of possible judgment in either case, and the facts are identical. They Avill therefore be considered as one case.
The plaintiffs are immigrant inspectors, of the Immigration and Naturalization Service District No. 8. They rendered their services (here involved) in connection with the *680 examination and landing of passengers and crews arriving in the United S'tates from Canada by air, land, or water, through the following public facilities at the Port of Detroit, the names of which indicate their nature and function:
Detroit & Canada Tunnel.
Ambassador Bridge.
Michigan Central Tunnel.
Walkerville Ferry (discontinued May 15, 1942).
Grand Trunk Bail way Ferries.
Bob-lo Ferries (discontinued July 1, 1940).
Detroit Municipal Airport.
Extra pay, alleged to be due under the statute, is sought for services rendered on Sundays and holidays. Quoting the findings of fact—
When such services were performed during regularly assigned tours of duty on Sundays or holidays, no extra pay was received for such Sunday or holiday work and in lieu thereof time off duty was granted on a subsequent workday.
The pay statute on which the cause of action immediately rests is the Act approved March 2, 1931, 46 Stat. 1467, reading as follows. It has been codified to suit the reorganization plan of the President, 54 Stat. 1238, as sections 109 (a) and (b), Title 8, U. S. C. 1940 ed., which, among other things (not here material), substitutes the Attorney General for the Secretary of Labor. The statute reads:
Be it enacted by the Senate and Mouse of Representatives of the United States of America in Congress assembled, That the Secretary of Labor shall fix a reasonable rate of extra compensation for overtime services of inspectors and employees of the Immigration Service who may be required to remain on duty between the hours of five o’clock postmeridian and eight o’clock ante-meridian, or on Sundays or holidays, to perform duties in connection with the examination and landing of passengers and crews of steamships, trains, airplanes, or other vehicles, arriving in the United States from a foreign port by water, land, or air, such rates to be fixed on a basis of one-half day’s additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond five o’clock postmeridian (but not to exceed two and one-half days’ pay for the full *681 period from five o’clock postmeridian to eight o’clock antemeridian) and two additional days’ pay for Sunday and holiday duty; in those ports where the customary working hours are other than those heretofore mentioned, the Secretary of Labor is vested with authority to regulate the hours of immigration employees so as to agree with the prevailing working hours in said ports, but nothing contained in this section shall be construed in any manner to affect or alter the length of a working day for immigration employees or the overtime pay herein fixed.
Sec. 2. The said extra compensation shall be paid by the master, owner, agent, or consignee of such vessel or other conveyance arriving in the United States from a foreign port to the Secretary of Labor, who shall pay the same to the several immigration officers and employees entitled thereto as provided in this Act. Such extra compensation shall be paid if such officers or employees have been ordered to report for duty and have so reported, whether the actual inspection or examination of passengers or crew takes place or not: Provided, That this section shall not apply to the inspection at designated ports of entry of passengers arriving by international ferries, bridges, or tunnels, or by aircraft, railroad trains, or vessels on the Great Lakes and connecting waterways, when operating on regular schedules.
These two sections correspond to section 5 of the Act of February 13, 1911, 36 Stat. 899, 901, as amended, quoted at length in the opinion of this Court in Myers, et al. v. United States, 99 C. Cls. 158, 169. That case was reviewed by the Supreme Court, United States v. Myers, 320 U. S. 561.
In the instant cases service performed during regularly assigned tours of duty on Sundays or holidays only is involved, and in that respect these are no different from the Myers case. As far as Sunday and holiday service is concerned the cases at bar are on all fours with the Myers case, and the plaintiffs are entitled to recover.
There are certain questions that Government counsel raise. One of them is whether the pay act embraces service in connection wholly with foot traffic. We do not understand from the stipulations filed that such a situation is here presented.
There are other situations that Government counsel describe as possible, but they do not appear in the stipulation1. *682 However, we may say that we see no distinction in principle between the various ways in which immigrants have arrived at the border, whether on foot or in private automobiles or busses. Government counsel also refers to “inspection services for the family of a motor car driver or his friends.” The import of this reference is not clear. The services rendered by inspectors are manifestly identical and appertain to a person rather than to his mode of travel or whether he is a motor car driver or a member of the family or friend of a motor car driver.
Sunday or holiday duty is not other than Sunday or holiday duty because the immigrant arrives by one mode of travel rather than another.
We agree that, should it appear in an accounting that the inspectors have already been paid the full extra compensation provided for in the Act of March 2, 1981, through the operation of the War Overtime Pay Act of 1943, the inspector has received all that he is entitled to under the Act of March 2, 1931. He is entitled, however, to a deficiency, if any. Section 7 of the War Overtime Pay Act of 1943, 57 Stat. 75,77, provides:
The provisions of this Act shall not operate to prevent payment for overtime services in connection with any of the following statutes: * * * Act of March 2, 1931 (46 Stat. 1467; U. S. C., title 8, secs. 109a and 109b) * * *: Provided, That the overtime services covered by such payment shall not also form a basis for overtime compensation under this Act.
The proviso makes it certain that the services performed by the plaintiffs on Sundays and holidays, having formed the basis for an additional two-days’ pay under the Act of March 2,1931, cannot again form the basis for overtime pay under the War Overtime Pay Act of 1943.
Defendant’s counsel resubmits a question of discrimination in pay which he claims results from the decision in the Myers case.
The comparison made is between two inspectors, one of whom works all seven days of the week, the other working only six days, having a week-day off to offset his work on Sunday. Both work on Sunday and only one of the two is *683 given corresponding time off on a following week-day. Counsel says tbat under the Myers case both get the same pay for the week, although one of them works one week-day less than the other. ;
And counsel terms this week-day off “compensatory” time off. That is the very thing we are trying to determine as a matter of law, whether the time off really is “compensatory”, that is, whether it satisfies the statutory requirement of extra pay for Sunday, in whole or in part. The fact that the word “compensatory” has legal implications influences us in eliminating it from the findings of fact, notwithstanding the parties have used it in their stipulations.
The accounting in the Myers case indicates that in order to ascertain the pay properly apportionable to a single calendar day, the inspector’s annual salary is divided by the number of months in a year, that is, by 12, to get’a monthly rate, and then the monthly rate is divided by 30, to get a daily rate. Presumably this follows the practice of the Government’s accounting officers. It will do here for illustrative purposes. The combined operation is of course found in using a divisor of 360 which, while it is not the number of days in a year, is approximately that number.
We take an annual salary of $3,600 for easy calculation. That, divided by 360, represents pay of $10 per calendar day, including of course Sundays and all workless days.
Two days’ statutory additional pay for Sunday would thus give the inspector $30 for Sunday, that is to say, $20, two days’ pay, additional to his basic pay of $10, a total of $30, raising his compensation for the year to $3,620, which conforms to the statute. If we withhold from him his pay of $10 for the week-day off duty, which defendant would have us do, still allowing him his extra pay of $20 for Sunday duty, we have given him only a net increase in pay of the difference between the $20 and the $10 (which is $10), and have raised his compensation for the year to $3,610 only, which does not conform to the statute, as construed by the Myers case.
The argument is that administrative practice has made this week-day off duty, compensatory, and therefore pay for that day must he withheld, or if regarded as paid for, withheld *684 from Sunday’s additional pay. Whatever the manipulation, the argument is that the $10 must not be paid the inspector.
But it is primary that practice and regulations must conform to the statute, must in fact be in aid of the statute which is sought to be administered. The administrative practice or regulation here involved is so violative of the terms of the statute, as construed by the courts, that the practice or regulation cannot be given effect. It is worse than “administrative” legislation; it is destructive of Congressional legislation. The statute itself does not authorize a deduction from annual pay; it provides for no “compensatory” time off. Even under defendant’s theory real compensatory time off would be two days, not one, for the extra pay for Sunday is two whole days’ pay.
In support of the doctrine of administrative practice the defendant cites Inland Waterways Corp. v. Young, 309 U. S. 517. But the opinion in that case is explicit (p. 524) : “Illegality cannot attain legitimacy through practice.” The court then said: “Even constitutional power, when the text is doubtful, may be established by usage” (p. 525). Here the text of the statute is not doubtful or ambiguous; it provides for “two additional days’ pay for Sunday or holiday duty.” A rule, practice, or regulation that substitutes time off during the week-days for this “two additional days’ pay” plainly contravenes the statute, is illegal, and never did become legitimate.
Pay is not docked for a workless Sunday, and no reason is apparent for deducting pay on account of a day off substituted for Sunday.
To many men, Sunday is a prized day of rest, for which no week day off can satisfactorily be substituted. This feeling has received recognition in the Act of Congress which gives so generous an addition of pay for Sunday work.
No statutory authority is cited for making a week day off, in lieu of Sunday, compensatory to the inspector for pay purposes, and we know of no such authority.
In all this, we are not to lose sight of the fact that the pay of an inspector is by way of an annual salary and is *685 not based on so much per day. The daily rate used is merely an apportionment. After the year’s work is done, one might well divide the number of days actually worked into the basic annual salary, to ascertain, for curiosity’s sake, the amount earned per work day. But here we are basing conclusions on calendar days, and they are not all work-days.
This view of the matter seems to have some support in the conclusion of the opinion of the Supreme Court in the Myers case, 320 U. S. 561, 576:
Finally the Government urges that in awarding compensation for “overtime” services credit should be allowed to it for that part of the base pay received for such services. We think the Congressional intention to give extra compensation precludes such a claim. The inspectors in addition to their regular salaries for week days are entitled to the statutory additional pay for overtime, Sundays and holidays. [Italics ours.] •
The opinion does not refer to regular salaries for Sundays, but regular salaries for week days, which the defendant here seeks to have reduced. We conclude that the inspectors are still entitled to their regular salaries for week days.
Judgement will be entered upon submission of an accounting under Buie 39 (b), made in accordance with this opinion. It is so ordered.
Jones, Judge; Whitakeb, Judge; and Littleton, Judge, concur.
Madden, Judge, took no part in the decision of this case.
In accordance with the above opinion, on plaintiffs’ motion for judgment, and upon a stipulation by the parties and a memorandum report by a commissioner of the court recommending judgment, it was ordered October 7, 1946, that judgment be entered as follows:
No. 46338 Walter A. Renner_$5,948. 99
No. 46355 Peter H. Krupp_ 4, 811.28