MaddeN, Judge,
delivered the opinion of the court:
The plaintiff sues for compensation for services as a Deputy Collector of Customs. The services were rendered at the Port of Roseau, Minnesota, which is located on a free public highway which crosses the boundary of the United States and Canada. The plaintiff was paid the regular annual salary for his services and this suit is for extra compensation for overtime services, and for services on Sundays and holidays, to which he claims he is entitled under statutes hereinafter discussed.
In the case of Howard C. Myers v. United States, 99 C. Cls. 158, entitled in the Supreme Court, United States v. Myers, 320 U. S. 561, the pertinent provisions of the Act of February 13, 1911, as amended, 41 Stat. 402, 19 U. S. C. 267, and of Sections 401, 450 and 451 of the Tariff Act of 1930, 46 Stat. *41 708, 715, cb. 497, Title IV, 19 U. S. C. 1401, 1450, 1451, were quoted and discussed. The Supreme Court held that the customs officers there involved were entitled under those statutes, to compensation in addition to their regular salaries, of two days’ pay for each day of work on Sundays and holidays, and of one-half day’s pay for each two hours of work, or fraction thereof consisting of at least one hour, after a full day’s work of eight hours.
The plaintiffs in the Myers and companion cases were employed at the port of Detroit. The several means of entry into the United States at that port were toll and railroad ferries, toll tunnels, toll bridges, and a railway slip dock. The effect of the Myers decision was to award to customs employees at this international border port the same rights to extra compensation under the statutes cited above which customs employees were already enjoying at seaports where passengers and property arrived on ships.
The plaintiff claims, and the Government denies, that the effect of the Myers decision is to award to Customs employees such as the plaintiff O’Rourke, whose port of entry is on a free public highway, the same rights as those who work at Detroit or at a seaport. The Government’s denial of this right is based upon the idea that it was the intention and effect of the Act of 1911, as amended, that the customs employees should receive the extra compensation specified in that act only if the Government could reimburse itself for the extra expense by collecting the excess from the travelers or shippers who were benefited by the services rendered at unusual hours. At seaports, and where toll facilities must be used for entry, it is possible to require the ship or the bridge or railway or ferry or tunnel company to post a bond to secure the payment of the extra compensation, when the amount of it shall have been ascertained. But where the entry is over a free highway or bridge, the Government says it would be intolerable and hence impossible to require the casual traveler or carrier, by automobile or bus or truck or on foot, to post a bond to pay his share of the extra compensation of the customs employee who served him on a Sunday or holiday or after working a normal day.
*42 It may here be observed that the Government did not, in fact, obtain reimbursement in the cases of the Detroit employees whose rights were decided in the Myers case, supra. It had not paid the employees the extra compensation and had not required the toll facilities to post security or reimburse it. After the decision of this court in the Myers case, on January 6, 1941, the Government began to require the posting of bonds by the toll facilities, but, after the decision of the Supreme Court in the Myers case on January 3, 1944, when the Government was about to collect on the bonds, many of the facilities threatened to close on Sundays and holidays if the law was enforced. (See S. Rep. No. 858, 78th Cong., 2d Sess., May 5, 1944, p. 2; H. Rep. No. 1446, 78th Cong., 2d Sess., May 16, 1944.) Thereupon Congress passed the Act of June 3,1944,58 Stat. 269,19 U. S. C., Supp. V, sections 1451, 1451a, not only waiving for the future the reimbursement of the Government by the toll facilities for extra services of employees, but also refunding any such money which had been collected.
It thus appears that the Government has not, in fact, been reimbursed by the toll facilities for the extra compensation awarded to the customs employees in the Myers and companion cases, supra. But that is probably without significance as to the Government’s claim that it was the intent and effect of the statutes involved in the Myers case that extra compensation should not be payable to the employees except at those customs stations where reimbursement could be obtained, whether or not it was in fact obtained, from those who used the services of the employees.
In one of the opinions in the Myers case in this court, 99 C. Cls., at page 176, the legislative history of the 1911 Act with regard to whether reimbursability was intended to be a prerequisite to a right to the extra compensation provided by the Act, is discussed. In the opinion of the Supreme Court in the Myers case it is said: “The legislative history shows that the proponents of extra compensation constantly made the point that the Government would not be out of pocket by the legislation.” 320 U. S. at p. 566. But the Supreme Court did not decide whether or not the possibility or practicability of reimbursement was a prerequisite to the *43 right to the extra compensation. In our view it is not necessary to decide that question here, since we think that it would not have been impossible or impracticable for the Government to obtain reimbursement at ports on free highways. The Supreme Court’s decision in the Myers case makes the extra compensation law applicable to customs employees at ports served by the various kinds of toll facilities, bridges, tunnels, ferries, etc., such as are found in Detroit. Before that decision, the law had been applied to ports served by ships. If it should now be concluded that the law was not applicable to employees at ports entered on free highways, it would mean that a residual group of customs employees, who do exactly the same kind of work in much the same circumstances as the Detroit employees would have to do, for nothing, that for which the Detroit and comparable employees are generously paid. The statute should not receive such a construction unless the legislative intent to so discriminate is clear. With this desire to give the statute a nondiscriminatory interpretation, we examine the practicability of the Government’s obtaining from users of extra services of customs employees at ports on free highways reimbursement for extra compensation to the employees, if the Govermnent should pay the employees such compensation.
It should be said at the outset that this question has never been tested by trial. The Government has, throughout the period of this law, taken the position that these employees had no right to the extra compensation, and hence has made no effort to devise a method of reimbursing itself. We think that the collection of a fee from each user of these ports on days or at hours other than normal business days or hours, which fees could have been pooled so that the well patronized ports would carry the isolated ones, would have been permissible, and not so inconvenient as to be impracticable, if necessary to avoid a discriminatory application of the extra compensation law. If it be said that by this method one person would pay more than the extra expense actually attributable to him, and another less, the same is true, of course, of the methods of collection now or formerly in use at the seaports and at Detroit. When collection is made *44 from a ship or a toll bridge or tunnel or ferry or railroad, the expense is ultimately, we suppose, reflected in the ship or rail fare or toll which is collected, not only from all of those who enter on Sundays or holidays or at night, but also from those who use the same facilities on ordinary days and in daytime hours. We are not disturbed, therefore, because the incidence of the extra expense might not fall with exactness upon each one who used the extra service on a particular day and at a particular port. We think therefore, that the Government could have paid this plaintiff his statutory extra compensation, and could have obtained reimbursement. That it did not, in fact, obtain reimbursement, is immaterial, under the Supreme Court decision in the Myers case.
In view of what is said above, the plaintiff has the right to the extra compensation provided in the Act of February 3, 1911 as amended, for night work and work on Sundays and holidays (other than wartime holidays), for the period covered by this suit. As to his services since June 3, 1944, his right is expressly given by Section 1 of the Act of that date which we set out in a footnote.[1] As to his services prior *45 to June 3, 1944, on Sundays and holidays, the plaintiff says that Section 2 of the Act of June 3,1944[2] gave him the benefit of the 1911 Act retroactively. The principal purpose of Section 2 was to provide that the services already rendered at Detroit and covered by the Myers decision should not require reimbursement by the facilities there involved, and that any reimbursement already made should be refunded. The insertion, in the House Committee of the word “highways” and the language of the Section as a whole is slightly suggestive that it may have been intended to give, retroactively, *46 to employees such as the plaintiff, rights under the Act of 1911. The plaintiff points to a statement in House Report No. 1446 (18th Cong., 2d Sess., May 16,1944, page 4) that:
The Committee amended the bill to include employees stationed on highways at international border crossings. Without such an amendment these employees would not receive compensation for work performed on Sundays, holidays, or nights, * * *.
as evidence that Section 2 was intended to retroactively give the plaintiff compensation. We think this statement refers to Section 1 of the 1944 Act, which is not retroactive. Section 2 says nothing about work at night, which indicates that the Committee statement did not relate to Section 2. In view of our decision above that employees such as the plaintiff always were entitled to the benefits of the Act of February 8, 1911, as amended, it is not necessary to decide whether Section 2 of the Act of June 3,1944 was intended to have a retroactive effect.
We now proceed to the discussion of the plaintiff’s specific claims.
As to “wartime” holidays, i. e., days which are, in peacetime, observed as holidays by Government employees, our decision in the case of John di Benedetto v. The United States, 108 C. Cls. 18, decided January 6, 1947, shows that, in our view, the plaintiff is not entitled to holiday compensation for those days.
As to work in excess of eight hours in one day, for which the plaintiff claims the extra compensation provided for night work under the Act of February 3, 1911, as amended, the Government urges that, unless such work was done before eight o’clock a. m. or after five o’clock p. m., it is not night work within the meaning of the statute. We think that the Supreme Court’s decision in the Myers case, supra, that no night work extra compensation was due even though all or a part of one’s assigned tour of duty of eight hours was performed after five and before eight o’clock, was a determination that the legal meaning of the expression “work at night,” was work in excess of eight hours in any one twenty-four hour period, regardless of the time of day that it was done. We think, therefore, that whenever the *47 plaintiff worked more than an eight-hour tour of duty in any one day, he is entitled to compensation for his overtime on the statutory basis.
The Government contends that “lieu time” or time off given to the plaintiff on another day can be set off against work by the plaintiff in excess of eight hours in one day. In the Myers case, supra, the Supreme Court said, 320 U. S. at 576:
Finally the Government urges that in awarding compensation for “overtime” services credit should be allowed to it for that part of the base pay received for such services. We think the Congressional intention to give extra compensation precludes such a claim. The inspectors in addition to their regular salaries for week days are entitled to the statutory additional pay for overtime, Sundays and holidays.
We think that the Myers decision and the decision of this Court in Renner v. The United States, 106 C. Cls. 676, decided May 6, 1946, prevent the setting off of lieu time against the time for which extra compensation is granted in the Act of February 3, 1911.
The Government urges that the plaintiff, though required to be present at the customs office for more than eight hours, did not actually perform customs services except as those services were irregularly required when persons and goods passed the port. The evidence shows that the business of the port did not require the plaintiff to work continuously. We think this fact is immaterial. The plaintiff was required to be at his post, during specified hours, as the representative of the Government for customs services. We suppose that that is all that is required of customs employees in any port. The Government holds itself out as having customs services available during specified hours, and charges certain employees with being there to perform them. That is their work, and the specified hours are their working day. The Government contention is without merit.
The Government contends that the plaintiff is not entitled to recover for “night” or overtime pay when the services performed on behalf of any one party or vehicle or conveyance required less than one hour to perform. This con *48 tention is based upon the provision of Section 5 of the Act of February 3, 1911, as amended, which awards overtime pay “for each two hours or fraction thereof of at least one hour”, and further provides that the Government should be reimbursed by the master, etc., of the vessel or other conveyance which is served during the overtime.. But the section provides also that “Such extra compensation shall be paid if such officers or employees have been ordered to report for duty and have so reported, whether the actual lading, un-lading, receiving, delivery, or examination takes place or not.” The employee’s overtime pay, then, is founded upon his being required by the Government to remain overtime, and not upon the particular services that he renders during the overtime.
The Government claims that any amounts otherwise recoverable by the plaintiff must be reduced by the amount of any additional pay already received by the plaintiff under the War Overtime Pay Acts of 1942[3] and 1943,[4] and the Federal Employees Pay Acts of 1945[5] and 1946.[6] The 1942 Act provided for “compensation for employment in excess of 40 hours in any administrative work-week computed at a rate of one and one-half times the regular rate”, to “all civilian employees in or under the United States.” No provision was made in the 1942 Act against the pyramiding of extra compensation, as was, as we shall see, made in the 1943 and 1945 Acts. The extra compensation to customs employees given by the Act of February 13,1911 was based, not upon a 40-hour week, but, regardless of the length of the work week, upon work in excess of eight hours in any one day, or work on Sundays or holidays. We do not construe the 1942 Act, which is wholly silent as to any set-off of extra compensation under existing laws against the extra compensation granted by the 1942 law, as impliedly requiring that extra compensation given for reasons not related to a 40-hour work week, should be withheld because other extra compensation was already being granted for those different reasons.
*49 The 1943 War Overtime Pay Act, supra, provided, in Section 7 that it should not “operate to prevent payment for overtime services in connection with any of the following statutes” and then listed, inter alia, the Act of February 13, 1911 granting extra compensation to customs employees. It then said “Provided that the overtime services covered by such payment shall not also form a basis for overtime compensation under this Act.” The plaintiff urges that Section 7 was intended to prevent only the pyramiding of overtime and does not authorize a set-off of Sunday and holiday pay against the 1943 additional compensation. He points out that in the 1945 Act, supra, the saving clause and proviso are as follows:
The provisions of this Act shall not operate to prevent payment for overtime services or extra pay for Sunday or holiday work in accordance with any of the following statutes,
listing, inter alia, the customs employees pay statute,
Provided that the overtime, Sunday or holiday services covered by such payment shall not also form a basis for overtime or extra pay under this Act.
The contrast between the two texts is striking. It may be that Congress was only making explicit what was implicit in the 1943 Act. It is more likely that it became aware, for the first time, of the problem of Sunday and holiday pay and was changing the law to provide for it. Since, as we have said in our discussion of the 1942 Act, the Sunday and holiday extra compensation were given by the Act of 1911 without regard to the length of the workweek and for a different reason, there was not any such obvious pyramiding of extra compensation in the 1943 Act as to justify us in imputing to Congress an intent not to give these employees both kinds of extra compensation. They had, for many years, been put by Congress in a highly preferred status over other Government employees and we cannot infer that, that preferred status was being withdrawn from them. We conclude, therefore, that plaintiff’s pay under the 1943 Act for overtime services should be set off against what he would *50 otherwise recover in this suit for work in excess of eight hours in one day, but not against what he recovers for Sunday and holiday services, as such, i. e., for eight hours work on Sundays and holidays. However, the plaintiff claims that there is no occasion to set off any of his overtime, i. e., work in excess of eight hours in one day, for which he is entitled to extra compensation in this suit, under the Act of 1911, against his overtime pay under the 1943 Act, because, he says, he worked a full six-day, forty-eight-hour week and thus earned his overtime pay under the 1943 Act, and, in addition, worked in excess of eight hours on the days for which he seeks recovery here. We think this contention is valid. It should be pointed out that in many weeks one of the plaintiff’s six days of eight hours, making up his forty-eight-hour week was Sunday. We think, however, that for the reasons given above, the Sunday, being one of the plaintiff’s assigned workdays, can no more be considered overtime under the 1943 Act than any other day of the week, and that, therefore, his Sunday pay was not overtime pay which should be set off under the 1943 Act.
We have already quoted the pertinent provisions of the Federal Employees’ Pay Act of 1945. This Act made it plain that not only overtime pay under the Customs pay act, but Sunday and holiday pay should be set off. While this Act was in effect, the plaintiff worked six days of eight hours each, plus twelve hours on Sunday. He claims that he was paid his wartime overtime of eight hours above forty hours for his sixth weekday of work, and that, therefore, his Sunday pay, and his additional four hours of overtime on Sunday, are not for the same services for which he received his wartime overtime, and should not be set off. As to the four hours of overtime, the plaintiff is plainly right and would be even if those hours had occurred on other days than Sunday. As to his Sunday pay, perhaps the fact that his six weekdays were regular eight-hour days and his Sunday a twelve-hour day is some justification for regarding his forty-eight-hour wartime week as being used up during the weekdays, and thus treating Sunday as a special and *51 additional day, not overlapping Ms forty-eigh.t-b.our wartime work week, which accounted for his wartime overtime. We treat it so, because the usual work week of other Government employees was the six days other than Sunday, and, according to the purpose of the 1911 Act, the plaintiff was again working on Sunday when other employees were free. We hold, therefore, that, during the time of the 1945 Act, the Government may not set off Sunday pay or overtime pay against wartime overtime pay for those weeks in which the plaintiff worked a full forty-eight-hour week in addition to Sunday and overtime.
The plaintiff’s original petition was filed on October 22, 1945. It claims compensation for extra services rendered on various days during the whole month of October 1939. Since the days in October 1939 prior to the 22nd were more than six years before the filing of the petition, the question arises whether the right to recover for those days is barred by the statute of limitations. (Judicial Code sec. 156, 36 Stat. 1139, 28 U. S. C. 262.) In our finding 2 it appears that the Government’s practice was not to pay for extra services until on or after the first day of the month following that in which the services were rendered. There was, therefore, no failure or refusal to pay, and no cause of action accrued for services rendered in October 1939, until at least November 1, 1939. The plaintiff’s right to recover for them is not barred by the statute.
As shown by our findings, the plaintiff is entitled to a judgment of $3,786.50.
It is so ordered.
JONES, Judge; and Littleton, Judge, concur.

 Before any such special license to nnlade shall be granted, the master, owner, or agent, of such vessel or vehicle shall be required to give a bond in the penal sum to be fixed by the collector conditioned to indemnify the united States for any loss or liability which might occur or be occasioned by reason of the granting of such special license and to pay the compensation and expenses of the customs officers and employees assigned to duty in connection with such unlading at night or on Sunday or a holiday, in accordance with the provisions of section 261 and 267 of this title. In lieu of such bond the owner, or agent, of any vessel or vehicle or line of vessels or vehicles may execute a bond in a penal sum to be fixed by the Secretary of the Treasury to cover and include the issuance of special licenses for the unlading of vessels or vehicles belonging to such line for a period of one year from the date thereof, upon- a request made by the owner, master, or person in charge of a vessel or vehicle, or by or on behalf of a common carrier or by. or on behalf of the owner or consignee of any merchandise or baggage, for overtime services of customs officers or employees at night or on a Sunday or holiday, the collector shall assign sufficient customs officers or employees if available to perform any such services which may lawfully be performed by them during regular hours of business, but only if the person requesting such services gives a bond in a penal sum to be fixed by the collector, conditioned to pay the compensation and expenses of such customs officers and employees, who shall be entitled to rates of compensation fixed on the same basis and payable in the same manner and upon the same terms and conditions as in the case of customs officers and employees assigned to duty in connection with lading or unlading at night or on Sunday or a holiday. Nothing in this section shall be construed to impair the existing authority of the Treasury Department to assign customs officers or employees to regular tours of duty at nights or on Sundays or holidays when such assignments are in the public interest: Provided, That the provisions of this section, sections 1450 and 1452 of this title, and the provisions *45 of section 267 of this title, insofar as such section 267 of this title requires payment of compensation by the master, owner, agent or consignee of a vessel or conveyance, shall not apply to the owner, operator, or agent of a highway vehicle, bridge, tunnel, or ferry, between the united States and Canada or between the united States and Mexico, nor to the lading or unlading of merchandise, baggage, or persons arriving in or departing from the United States by motor vehicle, trolley car, on foot, or by other means of. highway travel upon, over, or through any highway, bridge, tunnel, or ferry. At ports of entry and customs stations where any merchandise, baggage, or persons shall arrive in or depart from the United States by motor vehicle, trolley car, on foot, or by other means of highway travel upon, over, or through any highway, bridge, tunnel, or ferry, between the United States and Canada or between the United States and Mexico, the collector, under such regulations as the Secretary of the Treasury may prescribe, shall assign customs officers and employees to duty at such times during the twenty-four hours of each day, including Sundays and holidays, as the Secretary of the Treasury in his discretion may determine to be necessary to facilitate the inspection and passage of such merchandise, baggage, or persons. Officers and employees assigned to such duty at night or on Sunday or a holiday shall be paid compensation in accordance with existing law as interpreted by the United States Supreme Court in the case of the United States v. Howard C. Myers (320 U. S. 561) ; but all compensation payable to such customs officers and employees shall be paid by the United States without requiring any license, bond, obligation, financial undertaking, or payment in connection therewith on the part of any owner, operator, or agent of any such highway vehicle, bridge, tunnel, oi ferry, or other persons. As used in this section, the term “ferry” shall mean a passenger service operated with the use of vessels which arrive in the United States on regular schedules "at intervals of at least once each hour during any period in which customs service is to be furnished without reimbursement as above provided. As amended June 25, 1938, 52 Stat. 1082; June 3, 1944, 58 Stat. 269.

 Notwithstanding any provision of law to the contrary, the extra compensation of customs officers and employees heretofore assigned to the performance of inspectional services in connection with traffic over highways or toll bridges, through toll tunnels, or on ferries within the definition of the term “ferry” in section 1451 of this title on Sundays or holidays prior to June 3, 1944, which is payable on the basis prescribed by section 267 of this title, shall be payable by the United States without reimbursement by the applicants for such services or any other person. Any reimbursement of compensation made payable without reimbursement by this section which has accrued and been collected since-January 6, 1941, shall be refunded. The necessary moneys to carry out the provisions of this section and section 1451 of this title are hereby authorized to be appropriated from the general fund of the Treasury. June 3, 1944, 58 Stat. 270.

 Joint Resolution of December 22, 1942, Public Law 821, 56 Stat. 1068.

 Act of May 7, 1943, 57 Stat. 77; 50 U. S. C. App. Sec. 1407.

 59 Stat. 298, 5 U. S. C. 941.

 Public Law 390, 79th Congress, May 24, 1946, Section 601.