**GREENE v. UNITED STATES.**

**TONEY v. UNITED STATES.**

Nos. 47418, 47511.

United States Court of Claims.

Jan. 9, 1951.

Robert M. Drysdale, Detroit, Mich., for plaintiffs. Robert M. Drysdale, Jr., Detroit, Mich., was on the briefs.

Benton C. Tolley, Jr., Washington, D. C., with whom was Acting Asst. Atty. Gen. Newell A. Clapp, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

Plaintiffs are members of the Immigration Border Patrol. They sue for the extra compensation for Sunday and holiday work provided for in sections 1 and 2 of the Act of March 2, 1931, 46 Stat. 1467, 8 U.S.C.A. §§ 109a and 109b. The question presented is whether or not those sections are applicable to a member of the Immigration Border Patrol.

Aliens desiring to enter the United States are required to do so at designated ports of entry. At these ports there are stationed

immigration inspectors, who alone have power to permit an alien to enter the United States, except that under certain circumstances aliens may be admitted by a Board of Special Inquiry. The duties of the border patrol are to prevent the entry of aliens into the United States at places other than ports of entry. As the term indicates, they patrol the border between ports of entry for the purpose of preventing illegal entry of aliens. They have authority to arrest and question any person crossing the border who they have reason to suspect is an alien, and they have authority to arrest persons within the borders of the United States who they have reason to believe are aliens who have made an unlawful entry.

Upon the arrest of a person suspected of being an alien who had made or was attempting to make an unlawful entry, the border patrol takes him to an immigration inspector, who examines him to determine whether or not he is entitled to entry into the United States or entitled to remain in the United States if apprehended within its borders. Members of the border patrol have no right to permit an alien to enter the United States. This can be done, as stated above, only by an immigration inspector, or, in certain cases, by a Board of Special Inquiry.

These are the facts upon the basis of which we must decide whether or not plaintiffs are entitled to the benefits of the Act of March 2, 1931, supra. Section 1 of this Act, section 109a of 8 U.S.C.A. provides:

"The Attorney General shall fix a reasonable rate of extra compensation for overtime services of inspectors and employees of the Immigration and Naturalization Service who may be required to remain on duty between the hours of five o'clock postmeridian and eight o'clock antemeridian, or on Sundays or holidays, *to perform duties in connection with the examination and landing of passengers and crews of steamships, trains, airplanes, or other vehicles, arriving in the United States* from a foreign port by water, land, or air, such rates to be fixed on a basis of one-half day's additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond five o'clock postmeridian * * * and two additional days' pay for Sunday and holiday duty; in those ports where the customary working hours are other than those heretofore mentioned, the Attorney General is vested with authority to regulate the hours of such employees so as to agree with the prevailing working hours * * *."

Section 2 of the Act, section 109b of 8 U.S.C.A. provides:

"*The said extra compensation shall be paid by the master, owner, agent, or consignee of such vessel or other conveyance arriving in the United States* from a foreign port to the Attorney General, who shall pay the same to the several immigration officers and employees entitled thereto as provided in section 109a of this title. Such extra compensation shall be paid if such officers or employees have been ordered to report for duty and have so reported, whether the actual inspection or examination of passengers or crew takes place or not * * *."

[We have italicized the determinative words.]

Plaintiffs first say that the members of the border patrol, as well as immigration inspectors, examine persons undertaking to enter the United States, and they say, therefore, that they are entitled to the benefits of this Act. It is true that they do make a preliminary examination of persons seeking to enter the United States between ports of entry, but this is only for the purpose of determining whether or not the person is an alien. If there is reason to believe that he is, he is then taken before an immigration inspector for examination to determine whether or not he is entitled to entry. The extra compensation provided for is the examination preliminary to the giving or refusal of permission to enter. The Act refers to the performance of duties "in connection with examination and landing" of passengers and crews; that is to say, the examination preliminary to the grant of permission to land, that is, to enter into the United States.

A member of the border patrol has no power to give an alien permission to enter.

This can only be done by an immigration inspector, or, in certain cases, by a Board of Special Inquiry. The examination made by the members of the border patrol is not that examination contemplated by the Act of March 2, 1931. The examination there referred to is the examination at the port of entry to determine whether or not permission to "land", or to enter, shall be granted.

Plaintiffs next say that if they are in error in saying that the examination made by the members of the border patrol is the examination referred to in the Act of March 2, 1931—if they are wrong in this, they say that nevertheless the duties they perform are duties "in connection with the examination and landing of" persons seeking entry.

Plaintiffs are possibly correct in this. Their duties are to prevent the entry of persons, except after examination by immigration inspectors at ports of entry, and their duties further are to apprehend persons undertaking to illegally enter, or who had illegally entered, and bring them before the immigration inspector for examination. It would seem that plaintiffs did "perform duties in connection with the examination and landing" of persons desiring to enter the country.

However, we do not think plaintiffs come within the purview of the statute, because its provisions seem to relate only to duties performed *at the port of entry*, in connection with the examination and landing of persons desiring to enter the country.

Section 1 of the Act of March 2, 1931, provides for extra compensation to those who "perform duties in connection with the examination and landing of passengers and crews of steamships, trains, airplanes, or other vehicles, arriving in the United States from a foreign port by water, land, or air". Steamships, trains, airplanes, and other vehicles are required to arrive in the United States at a port of entry. They are not permitted to discharge their passengers or cargo at places other than a port of entry. Hence, it would seem that the extra compensation is for duties performed at the port of entry.

This section also provides, "in those ports where the customary working hours are other than those heretofore mentioned" the Attorney General is authorized to fix comparable working hours for the immigration inspectors. This would seem to indicate that Congress in the passage of this Act had in mind inspectors and employees at ports of entry and not at places between ports of entry, where plaintiffs' duties were performed.

Furthermore, section 2 of the Act provides for the payment of the extra compensation for nighttime, Sunday or holiday service by the "master, owner, agent, or consignee of such vessel or other conveyance arriving in the United States from a foreign port". Since these vessels or other conveyances could discharge passengers and cargo only at ports of entry, it would seem that the Act had in mind the payment of this extra compensation for the employees at such ports. Since the members of the border patrol did not work at ports of entry, it would seem, therefore, that they do not come within the scope of the Act.

The provision for custom and immigration inspectors to work at hours other than between 8:00 a. m. and 5:00 p. m., or on Sunday or a holiday, is a provision for the benefit of the owner of the vessel or other conveyance arriving at a port at such times.

In the early days of our country, vessels were prohibited from unlading their goods, wares and merchandise except during the daytime, unless the collector of the port issued a license to unlade them at night. Customs officers were paid for daytime duty only, and, hence, a master desiring the services of an inspector at nighttime had to pay him therefor himself.

The Act of March 3, 1873, 17 Stat. 579, gave express authority to the collectors to permit the unlading of the cargo of a vessel at night, but it provided, as a condition to securing a license to do so, that the master should pay to the collector a reasonable rate of compensation, to be fixed by the collector, for the inspectors assigned to superintend the unlading.

It will be seen, therefore, that this provision for extra compensation is one for the convenience of the master or owner of the vessel.

The Act of June 26, 1884, 23 Stat. 53, 59, also permitted the unlading of a vessel at night upon the issuance of a license so to do, the issuance of which was conditioned upon the master or owner of the vessel paying to the collector extra compensation for the inspectors superintending the unlading. This was also done by the Act of June 30, 1906, 34 Stat. 633.

The Act of March 2, 1931, supra, for the first time fixed the amount of compensation to be paid immigration inspectors for nighttime and Sunday and holiday service, but this also provided that the amount of this compensation should be paid by the master, owner, or consignee of the vessel or other conveyance.

All of these Acts provide for the payment of the extra compensation by the master or owner, because the unlading of a vessel at night or on Sunday or a holiday was for the master's convenience, and, therefore, payment of compensation for the extra duties consequently required of the inspectors was the obligation of the person requiring his services.

Most of the Acts above referred to concerned customs inspectors, but by the Act of March 2, 1931, immigration inspectors were placed on the same footing as customs inspectors. Immigration inspectors were supposed to work only between the hours of 8:00 a. m. and 5:00 p. m. and so, if, for the convenience of the master of the vessel, they were required to work at other hours, the law required the payment of extra compensation to them by the master, owner, or consignee of the vessel.

Since the requirement that the payment of extra compensation be by the owner of the vessel was because the services were rendered for his convenience, it would seem fairly clear that the members of the border patrol do not come within the provisions of the Act of March 2, 1931, providing for this extra compensation, because the master or owner or consignee of the vessel never required the services of the members of the border patrol, but only the services of inspectors or other employees at ports of entry.

This we do not think is at variance with what we said in O'Rourke v. United States, 109 Ct.Cl. 33, 40, et seq., and Taylor v. United States, 114 Ct.Cl. 59, 63, et seq. Both of these cases involved employees at ports of entry. In them we refused to discriminate against employees at ports of entry where it was difficult for the defendant to secure reimbursement for the overtime paid. We held these employees were entitled to the same treatment to which employees at ports where reimbursement could be secured were entitled. This, however, does not alter the fact that these overtime statutes were passed for the convenience of the people requiring the overtime service and, therefore, were intended to apply only to those employees whose services might be required.

We hold that plaintiffs are not entitled to the extra compensation provided for by the Act of March 2, 1931, supra. Their petitions will be dismissed.