Lloyd G. **BISHOP** et al.

v.

The **UNITED STATES**, and **BAHAMAS AIRWAYS, LTD.**, et al., Third-Party Defendants.

Charles R. **CHALLANDES**

v.

The **UNITED STATES**.

Nos. 150–63, 192–64.

United States Court of Claims.

Jan. 21, 1966.

John I. Heise, Jr., Washington, D. C., attorney of record, for plaintiffs. Gaines V. Palmes, Washington, D. C., of counsel.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

W. Glen Harlan, Atlanta, Ga., attorney of record, for third-party defendants. Gambrell, Harlan, Russell & Moye, and William R. Howard, Atlanta, Ga., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

LARAMORE, Judge.

In these actions 15 plaintiffs claim additional compensation for services rendered after regular hours and on Sundays and holidays. They base their claims on the Act of March 2, 1931, chapter 368, 46 Stat. 1467, as amended, 5 U.S. C. §§ 342c–342d (1964 Ed.). They have already received one and one-half times their basic wage rate for these services under the provisions of the Federal Employees Pay Act of 1945, chapter 212, 59 Stat. 295, 296, as amended, 5 U.S.C. §§ 901–911 (1964 Ed.). The defendant asks that the petition be dismissed, but asserts in the alternative that if it is liable under the 1931 Act, any recovery must be paid by certain airlines. Defendant has impleaded these parties as third party defendants under Rule 23. All parties have submitted motions for summary judgment. For the reasons set out below, we hold that the plaintiffs are entitled to recover from the government under the provisions of the 1931 Act, and that the government in turn, is entitled to recover from the third party defendants.

The facts are undisputed. The plaintiffs were employed as Immigrant Inspectors in the Immigration and Naturalization Service which is a part of the Department of Justice. As inspectors, plaintiffs examined passengers and crews of airplanes bound for United States ports of entry from Hamilton, Bermuda and Nassau, Bahamas. Extra-territorial examinations in "adjacent islands," or so-called "preinspections," are generally authorized by the Immigration and Nationality Act of 1952, chapter 477, 66 Stat. 163, 173, 202–203, as amended, 8 U.S.C. §§ 1103, 1228–1229 (1964 Ed.). The term "adjacent islands" specifically includes Bermuda and the Bahamas, 8 U.S.C. § 1101(b) (5) (1964 Ed.), and the Attorney General's regulations specifically provide that inspections made in adjacent islands for the purpose of determining whether persons may be admitted to the United States "shall have the same effect under the act as though made at the destined port of entry in the United States." 8 C.F.R. § 235.5(b) (1965 Supp.). Thus, the inspections made by plaintiffs in Bermuda and Nassau had the same effect as though made in New York or Miami at the time of arrival of the aircraft. Certainly immigration officers in the United States could re-inspect upon arrival, but as a practical matter, the Bermuda and Nassau inspections were final. This procedure was, of course, a great convenience to passengers and the carriers as it expedited arrival at the United States port of entry.

Preinspection procedures were inaugurated in Bermuda in February 1955 and Nassau in August 1959. Also, in August 1959 in Nassau, and in October 1960 in Bermuda, plaintiffs started performing the duties of customs inspectors as well as immigration officers. This dual inspection arrangement was agreed to by the Immigration and Naturalization Service and the Bureau of Customs.

Initially, defendant paid immigration officers performing preinspection duties in Bermuda under the 1931 Act, but in September of 1956 it discontinued this practice after the Comptroller General ruled that the terms of the 1931 Act were inapplicable to extraterritorial inspections other than in Mexico and Canada. 36 Comp.Gen. 166 (1956). Consequently, none of the plaintiffs have ever been paid under the 1931 Act as all have been stationed in Bermuda or Nassau since September 1956. All have worked between 5:00 p. m. and 8:00 a. m. and on Sundays and holidays.

■ The 1931 Act, 5 U.S.C. § 342c, provides for additional compensation as follows:

*Officers and employees; overtime services; extra compensation; length of working day.*

The Attorney General shall fix a reasonable rate of extra compensation for overtime services of immigration officers and employees of the Immigration and Naturalization Service who may be required to remain on duty between the hours of

five o'clock postmeridian and eight o'clock antemeridian, or on Sundays or holidays, to perform duties *in connection with the examination and landing of passengers and crews of * * * airplanes * * * arriving in the United States from a foreign port* by * * * air, such rates to be fixed on a basis of one-half day's additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond five o'clock postmeridian (but not to exceed two and one-half days' pay for the full period from five o'clock post-meridian [sic] to eight o'clock antemeridian) and two additional days' pay for Sunday and holiday duty * * *. [Emphasis added.]

Plaintiffs argue that the 1931 Act applies because they performed inspection duties "in connection with the examination and landing of passengers and crews * * * arriving in the United States." Defendant admits that read literally, the statute permits this construction. However, defendant contends that the act only applies to inspectors who perform the services at the "port of entry" at which the passengers "arrive" in the United States. We find no such limitation in the statute.

Before the Attorney General established the preinspection procedure for Bermuda and Nassau, inspections were made at the port of entry in the United States. Immigration Inspectors performing these duties were paid under the 1931 Act, where applicable. Plaintiffs here perform exactly the same duties, except at the point of embarkation. As noted earlier, this preinspection has the same effect as inspection performed at the port of entry. 8 U.S.C. §§ 1101(b) (5), 1228; 8 C.F.R. § 235.5(b). We can find no reason to discriminate between plaintiffs and inspectors performing identical duties within the United States. The 1931 Act applies to immigration officers who examine passengers "arriving" in the United States. While it is true that "arriving" is the *present* participle and

that the passengers and crews examined in Bermuda and Nassau would actually arrive in the United States in the *future,* we have little difficulty concluding that the statute applies to these plaintiffs since the inspections had the same function and effect as those customarily performed in the United States, and since the arrival of the aircraft in the United States was sufficiently probable as to be a near certainty. Under these circumstances, it takes no stretch of the imagination to decide that these plaintiffs performed duties "in connection with the examination and landing of passengers and crews * * * arriving in the United States."

We find support in United States v. Central Vermont Ry., 16 F.Supp. 864 (D.Vt.1936). In that case, the government prevailed in a suit against the carrier for overtime wages paid by the Immigration and Naturalization Service to immigration officers who inspected passengers and crews on trains in Canada *en route* to the United States. There was no dispute that the immigration inspectors were entitled to the extra compensation under the 1931 Act. Indeed, this has long been the policy for immigration inspectors located in Canada. This is established by affidavits which show that immigration officers performing duties identical to plaintiffs' at airports in Montreal, Toronto, Winnipeg, Victoria and Vancouver have consistently been paid under the 1931 Act. Defendant would have us distinguish this practice from the present case on the ground that the government has consented only because the carriers are paying the extra compensation. Defendant also points to the distinction made by the Comptroller General that the inspectors in Canada stand in a different position because "the arrival of carriers in the United States after embarkation is relatively proximate." 36 Comp.Gen. 166, 171 (1956). Such an invidious distinction is completely untenable. The status of inspectors stationed at Canadian airports is indistinguishable from plaintiffs' status in Bermuda and Nassau. Nothing

turns on the fact that Canada is contiguous or that the Canadian cities may be more "proximate;" some flights from Bermuda and Nassau are no doubt actually shorter than flights from some Canadian cities to distant United States cities. It is the words of the statute which control, and they give no warrant for any such distinction.

We have some trouble, however, with Greene v. United States, 94 F.Supp. 666, 118 Ct.Cl. 248, cert. denied, 342 U.S. 813, 72 S.Ct. 26, 96 L.Ed. 615 (1951). Defendant quite properly points out that in holding that immigration officers patrolling the border between ports of entry were not entitled to compensation under the 1931 Act, this court said that "its [the 1931 Act's] provisions seem to relate only to duties performed *at the port of entry,* in connection with the examination and landing of persons desiring to enter the country." 94 F.Supp. 666, 668, 118 Ct.Cl. 248, 256. Indeed, the apparent basis of that holding is that the 1931 Act applies only to persons performing inspectional services at a port of entry. Because the court disposed of the case on the port of entry theory, it never had to reach the question of whether border patrol officers performed duties "in connection with the examination and landing of passengers." It did, however, suggest that the border patrol officers probably met the test.

While we might prefer that *Greene* did not lurk in the underbrush or that it had been disposed of on a finding that the border patrol officers did not perform services qualifying under the 1931 Act, we are confident that our decision today does no violence to the real holding in *Greene.* The "port of entry" analysis in *Greene* was bottomed on the theory that the provisions of the 1931 Act relating to the "landing of passengers and crews of steamships, trains, airplanes, or other vehicles, arriving in the United States from a foreign port" *seem* to apply to duties performed at ports of entry. 5 U.S.C. § 342c. The court reasoned that such vehicles could only enter the United States at a port of entry where the inspection would be carried out. Of course, since 1951 when *Greene* was decided, the whole complexion of international air traffic has changed and one of these changes is in the immigration and customs inspection procedure. Preinspection was not before the court in *Greene,* nor was it foreseen in the opinion. We feel, however, that preinspection is within the 1931 Act, even though in 1951 it appeared to this court that the provisions of that act "seem to relate only to duties performed *at the port of entry.*" We recognize that Congress in 1931 probably did not foresee the possibility of preinspection schemes for extraterritorial airports, and that for this reason the statute may *seem* to be limited to ports of entry. We recognize also that neither Hamilton, Bermuda nor Nassau, Bahamas is or could be considered to be a port of entry. Immigration and Nationality Act of 1952, chapter 477, 66 Stat. 163, 203, 8 U.S.C. § 1229; 8 C.F.R. § 235.5(b); Federal Aviation Act of 1958, 72 Stat. 731, 799, as amended, 49 U.S.C. § 1509(b) (1964 Ed.). Cf., 19 C.F.R. § 1.1 (1965 Supp.). However, we conclude that where inspectors in Bermuda and Nassau perform the same duties as inspectors located at ports of entry in the United States—unlike border patrol officers—and where the inspections have the same practical effect as though made at a port of entry, the requirements of the 1931 Act are met.

Another factor we find persuasive is that customs inspectors performing customs inspection duties at Bermuda and Nassau airports would apparently be entitled to extra compensation for overtime work under the Act of February 13, 1911, chapter 46, 36 Stat. 899, 901, as amended, 19 U.S.C. § 267 (1964 Ed.). Plaintiffs allege that this was the actual practice during the years in issue and defendant does not disagree. There is considerable authority supporting plaintiffs' argument that the 1931 Act sought to put immigration inspectors on an equal footing with customs inspectors. Wiley v. United States, 145 F.Supp. 945, 136 Ct.Cl. 778,

(1956); Gibney v. United States, 114 Ct.Cl. 38 (1949); Canadian Pac. Ry. Co. v. United States, 73 F.2d 831 (9th Cir. 1934). In *Canadian Pac. Ry. Co.*, the court, at page 834, quoted a Senate Committee on Immigration Report on the 1931 Act:

> One of the best reasons for favoring this legislation is that for many years the customs employees have had a similar overtime provision to that proposed in this bill, while the immigration officers working side by side with them in the performance of their duties have been, so far, discriminated against. [S.Rep. No. 1720, 72d Cong., 1st Sess. (1931).]

We think this accurately states the purpose of the 1931 Act. Our conviction is strengthened by the similarity of the 1931 Act's language to that of the 1911 Act. In this case, we feel that the purpose of the 1931 Act is particularly well-served by applying the Act to these plaintiffs, because since August 1959 in Nassau and October 1960 in Bermuda, they have actually been performing not only their duties as immigration inspectors *but also the duties customarily performed by customs inspectors.*

■ Regarding the obligation to pay plaintiffs, defendant has argued that the legislative history to the 1931 Act shows that the provisions apply only where the carriers are required to reimburse the government, and that therefore if the act applies here, the carriers as third party defendants are liable. We hold that the government is primarily liable to these employees by statute, 5 U.S.C. § 342c (1964 Ed.), United States v. Myers, 320 U.S. 561, 567, 64 S.Ct. 337, 88 L.Ed. 312 (1944),[1] and that the carriers, in turn, are liable to the government under the express terms of 5 U.S.C. § 342d (1964 Ed.).[2]

■ The third party defendants have argued that they are not liable under the following proviso contained in 5 U.S. C. § 342d: "[T]his section shall not apply to the inspection at designated ports of entry of passengers arriving by * * * aircraft * * * when operating on regular schedules." We have said earlier that neither Bermuda nor Nassau is a "designated port of entry," real or constructive. It is not enough that the extraterritorial inspections had the same effect as if made at a designated port of entry. The terms of the proviso are quite explicit and it cannot apply as the third party defendants here request.

Defendant's motion for summary judgment on the petition is denied, defendant's motion for summary judgment on

---

1. In Taylor v. United States, 114 Ct.Cl. 59 (1949), this court held that an immigration inspector who inspected persons arriving on foot at the Mexican border was entitled to overtime compensation under the 1931 Act even though there was no reimbursement by a common carrier. This decision was indicated by O'Rourke v. United States, 109 Ct.Cl. 33 (1947) (customs inspector), and Renner v. United States and Krupp v. United States, 106 Ct.Cl. 676 (1946) (immigration inspectors). These cases followed United States v. Myers, 320 U.S. 561, 64 S.Ct. 337, 88 L.Ed. 312 (1944). In Myers, the Supreme Court held that customs inspectors working at tunnels, bridges and ferries were entitled to overtime pay for additional hours worked notwithstanding the absence of a reimbursement scheme. The Court noted that the United States was the employer and that the statutes created the liability to pay the employees.

2. 5 U.S.C. § 342d. *"Extra compensation; payment.* The said extra compensation shall be paid by the * * * owner * * * of such vessel or other conveyance arriving in the United States from a foreign port to the Attorney General, who shall pay the same to the several immigration officers and employees entitled thereto as provided in section 342c of this title. Such extra compensation shall be paid if such officers or employees have been ordered to report for duty and have so reported, whether the actual inspection or examination of passengers or crew takes place or not: *Provided*, That this section shall not apply to the inspection at designated ports of entry of passengers arriving by international ferries, bridges, or tunnels, or by aircraft, railroad trains, or vessels on the Great Lakes and connecting waterways, when operating on regular schedules."

its contingent claim against the third party defendants is granted, the third party defendants' motion for summary judgment is denied, and plaintiffs' motion for summary judgment is granted. Judgment is entered for all plaintiffs against the United States for the period of six years prior to the filing of the petition, and judgment is entered for the United States against the third party defendants. The amounts of recovery will be determined pursuant to Rule 47(c)(2) in accordance with this opinion.