## GRANT v. UNITED STATES.
### No. K–302.

Court of Claims.
June 2, 1930.

George A. King, of Washington, D. C. (King & King, of Washington, D. C., on the brief), for plaintiff.

M. C. Masterson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Herman J. Galloway, Asst. Atty. Gen., and Charles F. Kincheloe, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, and WILLIAMS, Judges.

GREEN, Judge.

The petition alleges, in substance, that plaintiff was retired as a warrant machinist in the United States Navy on December 4, 1903, for incapacity resulting from an incident of service, and is still in a retired status, and that since his retirement he was employed by the Isthmian Canal Commission and by the Panama Canal as inspector, at a station in Baltimore, Md., under various appointments and with certain compensation involving the periods from April 7, 1909, to May 3, 1917, and November 29, 1919, to February 28, 1922.

The petition further alleges, in substance, that there was withheld from the plaintiff each month during the period of his service as aforesaid a sum equal to the amount of his pay as a retired officer of the United States for the time involved.

The plaintiff therefore seeks to recover a sum equal to the aggregate of his retired pay as a retired naval officer from April 7, 1909, to May 3, 1917, and from November 29, 1919, to February 28, 1922.

The defendant demurs to the petition on the ground that the cause of action set forth therein is barred by the statute of limitations, the petition in the case having been filed June 28, 1929, and more than six years after the claim set forth in the petition first accrued.

The last services rendered by the plaintiff, as alleged in the petition, were on February 28, 1922. There seems, therefore, to be no question but that the claim of the plaintiff first accrued on March 1, 1922, which is more than six years before the filing of the petition. The plaintiff, however, contends that the Acts of May 31, 1924 (43 Stat. 245, 5 USCA § 62), and March 12, 1928 (45 Stat. 310, 48 USCA § 1305a), had the effect of a new promise to pay the debt owing for plaintiff's services and to extend the period of limitations so that it would have no application to the case. This contention makes it necessary for us to consider the construction and effect of the provisions of the statutes upon which it is based.

Section 4 of the Act of August 24, 1912 (37 Stat. 561, 48 USCA § 1305), establishing a permanent organization for the Panama Canal, so far as is material in this case, provides: "If any of the persons appointed or employed as aforesaid shall be persons in the military or naval service of the United States, the amount of the official salary paid to any such persons shall be deducted from the amount of salary or compensation provided by or which shall be fixed under the terms of this section."

The Act of May 31, 1924, 5 USCA § 62 (relied upon by plaintiff), amended the Act of July 31, 1894 (28 Stat. 205), by adding thereto the following sentence: "Retired enlisted men of the Army, Navy, Marine Corps, or Coast Guard retired for any cause, and retired officers of the Army, Navy, Marine Corps, or Coast Guard who have been retired for injuries received in battle or for injuries or incapacity incurred in line of duty shall not, within the meaning of this section, be construed to hold or to have held an office during such retirement."

It appears that the Comptroller General, in a decision dated September 22, 1919, held that retired enlisted men are not in the military or naval service of the United States within the meaning of the Act of August 24, 1912, "to the extent that their pay as such is comprehended within the term 'official salary,'" and that they might be employed by the Panama Canal without deducting their retired pay from their compensation as such employees. This decision was overruled by the Comptroller General on September 28, 1923, and upon recommendation of the Secretary of War Congress enacted the provisions of the statute of May 31, 1924, above referred to and set out. Nevertheless the Comptroller General held that the Act of May 31, 1924, did not affect the status of retired enlisted men under the act of 1912, and, the situation being again considered by Congress, on March 12, 1928, a statute was enacted providing in part that section 4 of the Panama Canal Act "shall not be construed as requiring the deduction of the retired pay or allowances of any retired warrant officer or enlisted man of the Army, Navy, Marine Corps, or Coast Guard * * * from the amount of the salary or compensation provided by or fixed under the terms of the Panama Canal act, as amended."

■ As before stated, counsel for plaintiff contend that the said acts of 1924 and 1928 remove the bar of the statute of limitations in the case under consideration. The question thus arising is possibly not free from doubt, but on the whole we think the contention cannot be sustained.

In the case of Crede H. Calhoun, Adm'r, v. United States, 66 Ct. Cl. 545, which was similar in its facts to the one at bar and in which a similar deduction was made from the salary in controversy, it was held that the deduction was not rightfully made, but the statute of limitations was not involved. In the opinion this court said: "From the date

of the Panama Canal act in 1912 and until the decision of the Comptroller General in 1923, throughout a period of eleven years, no such deduction had ever been made. Congress had repeatedly and consistently indicated its policy on the subject, and by the amendatory act of May 31, 1924, had expressly declared that policy. In the enactment of the recent act Congress has placed a legislative construction upon its own prior act by declaring that said act *shall not be construed* as applying to a retired enlisted man."

But the court further said in this connection: "Aside, however, from this conclusion, we are of the opinion that the language used in the act of 1912 clearly indicates that the act was not intended to apply to retired enlisted men."

■ It will be observed that, in the paragraph last quoted from this decision, the court definitely held that the act of 1912 was never intended to apply to retired enlisted men. We agree with this, and reaffirm the former decision. Nor do we think that the fact that Congress passes an amendment to an act on account of a decision made by the Comptroller General necessarily shows that Congress accepts the construction placed upon the act by that officer. The reason for passing the act may be to remove the necessity of commencing a suit to test the correctness of his rulings and relieve numerous claimants from the expense attached thereto, which in some cases might be as much as the amount of the claim.

In any event we think, as said in the Calhoun Case, supra, that Congress, by the amendments referred to, merely placed a legislative construction on its previous enactments. It did not change the act of 1912, but stated how it should be construed. The result, we think, was quite different from what it would have been had the act been changed so as to give the plaintiff a right which he did not before possess.

■ There is also another difference which we think is decisive of the case. The plaintiff cites a number of decisions in which it appeared that there had been an appropriation made by Congress to pay the claim on which suit was brought, or a check or a warrant had been issued for its payment by the government officials, or some other similar action had been taken. Obviously the making of an appropriation to pay a claim, or the issuance of a warrant for its payment, is a recognition of its validity which would affect the running of the statute of limitations, but it

should be particularly observed in this connection that such action is a recognition of a specific claim and the amount thereof. In other words, it is an acknowledgment or admission that the government is indebted to the claimant in a specific amount. In this case there is nothing that amounted to an acknowledgment of indebtedness under any reasonable construction of the amending statutes. What Congress did was to prescribe a rule which should be followed by the courts and its auditing officials in determining the law as *applicable to a certain class of cases.* In the cases relied upon by plaintiff, the facts were admitted and that under the law applicable thereto a certain amount was due on the claim to the claimant. But in the case at bar there is no admission that anything is due the plaintiff, and no facts whatever were admitted. Claimants must still present proof of their cases either to the government officials or to the court, as the case might be. It is true that when this proof was offered the law applicable thereto was made definite; but the rule was no different than what it was before the amending statutes were enacted. An examination of the decision in the Calhoun Case, supra, will show that the court considered that the question therein was whether the act of 1912 was applicable; and its conclusion, as stated in the last paragraph of the opinion, was "that the pay received by retired enlisted men in the military or naval service of the United States is not *official salary* as that term is used in the act of August 24, 1912."

It follows that the claim of plaintiff is barred by the statute of limitations and that his petition must be dismissed. It is so ordered.