## GIESSLER v. UNITED STATES.
### No. 49653.

United States Court of Claims.

Decided May 1, 1951.

Anthony P. Giessler, pro se.

Benton C. Tolley, Jr., Washington, D. C., with whom was Acting Asst. Atty. Gen., Newell A. Clapp, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

Plaintiff Anthony P. Giessler's petition alleges that he was a customs inspector of the United States from prior to November 1, 1929, until some time in 1939, when he was promoted to assistant customs agent, and that from November 17, 1929 and thereafter until 1939 plaintiff was assigned to perform Sunday, holiday, and overtime services at certain toll entrances to the United States from Canada. The petition further alleges that the port of entry facilities to which he was assigned are identical to those considered by the United States Supreme Court in United States v. Myers, 320 U.S. 561, 64 S.Ct. 337, 88 L.Ed. 312; that plaintiff's status is identical to that of Myers; that Section 2, Public Law 328, 78th Congress, 2nd Session, 58 Stat. 270, 19 U.S.C.A. § 1451a provides that persons situated as is plaintiff should be paid for their past Sunday and holiday services according to the formula of the Myers decision, any law to the contrary notwithstanding; and that plaintiff is entitled to recover $2,595.36 for such services.

The Act upon which plaintiff relies became law on June 3, 1944; the services for which plaintiff seeks compensation were rendered between 1929 and 1939; plaintiff filed his petition in this court May 24, 1950. The Government has moved to dismiss the petition on the ground that the cause of action upon which plaintiff sues accrued more than six years prior to the date his petition was filed in this court and is, therefore, barred by the statute of limitations.

It is a jurisdictional requisite in suits of this nature in this court that the claim shall not have accrued more than six years before the filing of the suit unless the claimant was subject to one of the disabilities named in the statute of limitations. 28 U.S.C. § 2501; Moorehead v. United States, 81 F.Supp. 223, 112 Ct.Cl. 298. No disability is alleged by plaintiff, and, clearly, the services for which compensation is sought were ren--

dered more than six years before the petition herein was filed. The plaintiff urges, however, that for the purposes of this suit the statute does not commence running from the date the services were rendered, but from the date of passage of the Act of June 3, 1944. Plaintiff's contention is based upon the wording of Section 2 of that Act, 58 Stat. 270, 19 U.S.C.A. § 1451a which reads as follows: "Notwithstanding any provision of law to the contrary, the extra compensation of customs officers and employees heretofore assigned to the performance of inspectional services in connection with traffic over highways or toll bridges, through toll tunnels, or on ferries * * * on Sundays or holidays prior to June 3, 1944, which is payable on the basis prescribed by section 267 of this title, shall be payable by the United States without reimbursement by the applicants for such services or any other person. Any reimbursement of compensation made payable without reimbursement by this section which has accrued and been collected since January 6, 1941, shall be refunded. The necessary moneys to carry out the provisions of this section and section 1451 of this title are hereby authorized to be appropriated from the general fund of the Treasury."

Plaintiff's position is that this section of the Act is a *grant* to customs officers who rendered Sunday and holiday services prior to June 3, 1944, and have not been paid therefor; that the amount of the grant is to be computed according to the Customs Overtime Act, 36 Stat. 901, 19 U.S.C.A. § 267 as interpreted by the Myers decision, supra; and that the introductory phrase, "Notwithstanding any provision of law to the contrary," waives the statute of limitations as applied to claims accruing before June 3, 1944. In other words, plaintiff contends that the Act of June 3, 1944, created a new cause of action upon which suit may now be brought, payment not having been made by the employing department after the filing of proper claim.

The defendant contends that the effect of the Act of June 3, 1944, was not to make a new grant of Sunday and holiday compensation to customs officers whose claims might be barred by the passage of time, but was only to allow the Bureau of Customs to pay Sunday and holiday compensation to customs officers without collecting reimbursement therefor from the operators of certain entry facilities (bridges, tunnels, ferries, etc.). Upon this basis defendant urges that plaintiff's claims accrued no later than 1939 and that no action filed in 1950 can be maintained upon them. We are led to agree with defendant and to dismiss the petition herein upon an examination of the Act in the light of its legislative history.

The basic Customs Overtime Act was enacted February 13, 1911, 36 Stat. 901, 19 U.S.C.A. § 267, and provided that when customs officers were required to work nights, Sundays, or holidays in connection with the lading or unlading of vessels, they should receive extra compensation therefor, said compensation to be paid by the owner of the vessel or his representative to the Collector of Customs who should pay it to the officers entitled thereto. For many years prior to the decision of the Myers case in January 1944, the Bureau of Customs had regarded the night, Sunday, and holiday compensation provisions of that legislation as being applicable only to inspectors assigned to duty on *vessels* and had failed to collect from the operators of inland entry facilities any fees for night, Sunday and holiday customs service. Nor did the Bureau pay extra compensation to inspectors who worked nights, Sundays and holidays at highways, railways, bridges, tunnels, or ferries. Such posts were manned by inspectors who drew only their annual base pay and worked in shifts, alternating hours and stations.

A great deal of dissatisfaction within the service arose from the fact that customs officers holding identical positions and doing identical work received substantially different pay depending upon whether they were assigned to the inspection of vessels or to the inspection of other means of entry into the United States. Eventually, one Myers, a customs officer at the Port of Detroit, carried his claim for night, Sunday, and holiday compensation to the

United States Supreme Court and there established the right of a customs officer attached to a toll facility to extra compensation for Sunday and holiday work to be computed upon the same basis as that of officers assigned to the inspection of vessels. (The Bureau's position as to night work was upheld.) United States v. Myers, supra.

The Myers decision made it clear that customs officers at toll facilities, as well as those assigned to vessels, must be paid extra compensation for Sunday and holiday work.[1] The law was also clear that such customs officers were to be paid from assessments upon the facilities serviced upon Sundays and holidays. Accordingly, Collectors of Customs had no alternative than to charge the operator of each bridge, ferry, tunnel, etc., the cost of extra compensation to be paid customs officers for services rendered upon a Sunday or holiday. The operators' reaction to these levies was immediate and drastic. They closed their facilities on Sundays and holidays rather than pay the required fees. On Sunday, May 7, 1944, nine out of the eleven bridges on the Mexican border were closed, their owners stating that they would continue to be closed on Sundays and holidays thereafter, unless they were relieved of the obligation to reimburse the Government for necessary customs service. The Rainbow Bridge at Niagara Falls, N. Y., one of the principal facilities for international traffic between the United States and Canada, was closed. Three other bridges on the Canadian border continued open on Sundays only under restraining orders issued by the courts. The situation strained relations between this country and Canada, and Mexico, impeded the war effort, and inconvenienced thousands of travelers. To remedy this situation S. 1758, A Bill To Amend Section 451 of the Tariff Act of 1930, was introduced and eventually enacted as Public Law 328, Act of June 3, 1944, 58 Stat. 269, 19 U.S. C.A. § 1451.

The purpose of the Act of June 3, 1944, was to allow the Bureau of Customs to pay customs officers Sunday and holiday compensation according to the Supreme Court's formula without the necessity of requiring reimbursement from the transportation facilities being serviced. Although susceptible to more than one interpretation, the Act itself contains no express waiver of the statute of limitations and no provision for revival of claims that have been barred by the statute. The legislative history of the Act makes it clear that none was intended and that none should now be implied.

In reporting the bill from the Senate Finance Committee, Senator Taft said:[2]

"The purpose of this bill is to deal with the emergency situation which has arisen on account of the threatened closing on Sundays and holidays of certain international bridges and tunnels on the Mexican and Canadian borders as a result of requirements of existing law as interpreted by the United States Supreme Court in the case of the United States v. Myers, 320 U.S. 561 [64 S.Ct. 337, 88 L.Ed. 312], decided January 3, 1944.

\* \* \* \* \* \*

"Section 451 of the Tariff Act of 1930 and related statutory provisions provide in effect for the payment to customs employees assigned to certain services at night or on Sundays and holidays at double their ordinary rates of compensation. The Supreme Court of the United States in the Myers case ruled that these overtime compensation provisions apply to services at certain international toll bridges and tunnels involved in that suit. The committee decided that the emergency faced by the threatened closing of the bridges did not permit time for the consideration of any proposed amendments which would alter the extra compensation provisions of existing law as interpreted by the Supreme Court. The bill directs that the Bureau of the Budget conduct a survey and submit its recommendations to Congress within 90

1. The status of customs officers assigned to duty at free highways was still in doubt.

2. Senate Report No. 858, 78th Cong., 2d Sess., May 5, 1944.

days concerning the appropriateness of those laws in the general structure of Federal employee compensation with a view to Congress taking further action at the earliest practicable date."

Representative West, reporting the bill to the House from the Committee on Ways and Means, followed substantially the language used by Senator Taft, pointing out, as had the Senator that:[3]

"The bill establishes the principle that whenever the public interest requires that international bridges, tunnels, and ferries be kept open to international traffic during the night and on Sundays and holidays, the necessary customs service should be provided as a public service at the expense of the Government, without making public access to such facilities dependent upon the payment by the owners of compensation for customs officials and employees necessarily assigned to duty at such facilities. Immigration and other Federal inspectional services are already furnished at Government expense, and there is no logical basis for distinction."

The House amended the bill to include customs officers stationed on free highways at international border crossings among those who were to receive Sunday and holiday compensation inasmuch as their status was still in doubt under the Myers decision. The conference committee accepted the House amendment and made no other material changes.

Senator Vandenberg, asking for the Senate's unanimous consent to consider S. 1758 out of order as a measure dealing with "a pressing emergency situation on the international boundaries both north and south," summed the bill up as follows:[4]

"First, it accepts for the Government the obligation of paying overtime to customs inspectors on international bridges, tunnels, and ferries on Sundays and holidays, an obligation which the Treasury readily concedes belongs to the Government. Second, it certifies to these customs officials the rates of pay which are required under the Supreme Court decision in the Myers case. Third, it calls upon the Bureau of the Budget within 90 days to make a report to the Congress respecting the readjustment of the entire base pay and overtime pay schedules of the customs system so that all discriminations may be eliminated.

"Except as the bill is passed, Mr. President, before next Sunday there will be a closing of additional bridges and tunnels on Sunday and holidays—some bridges were closed last Sunday—and as a result the inconvenience to the public will be very great. This bill meets the situation in all its aspects. It has the total approval of the Senate Finance Committee, and I ask unanimous consent for its present consideration."

Representative West, speaking in the House, asked for emergency consideration by that body in words of similar import.[5] Nowhere does it appear that either house of Congress, or any of the committees that considered S. 1758, or any of the bill's individual sponsors, considered that they were doing more than making payable to customs employees Sunday and holiday compensation without the necessity that the Government collect such amount from the facility serviced. It does not appear that Congress ever considered the question of reviving claims for Sunday and holiday services that had been barred by the passage of time. It does not appear that Congress was even aware that such long-pending claims existed. The opening sentence of Section 2 of the Act—"Notwithstanding any provision of law to the contrary"—read in connection with the other provisions of the Act and in the light of its legislative history had obvious reference to the provision of law requiring the Government to collect Sunday and holiday compensation for customs officers from the facilities serviced. The statute of limitations was not considered, and the

---

3. House of Representatives Report No. 1446, 78th Cong., 2d Sess., May 16, 1944.
4. Congressional Record, May 8, 1944, p. 4191.
5. Congressional Record, May 18, 1944, p. 4717.

quoted phrase had no reference to it. Had Congress seen fit to expand the jurisdiction of this court by allowing it to adjudicate claims arising more than six years before the filing of suit, it is reasonable to assume that it would have done so expressly. "Any provision of law to the contrary" is a reference to substantive law. We shall not attempt to imply therefrom an extension of the jurisdiction of this court.

The appropriation authorized by Section 2 of the Act of June 3, 1944, authorized the expenditure of money to meet the Government's obligation to properly compensate the Sunday and holiday labor of customs officers out of the general fund of the Treasury, rather than from the proceeds of levies against the operators of entry facilities, and to refund to operators such amounts as had been collected from them for customs service since the Myers decision. Such authorization of appropriation was intended as an implementation of the Act and was not a grant for the payment of stale claims. It was not the intent of Congress to grant retroactive rights under Section 2 of the Act of June 3, 1944. Cf. O'Rourke v. United States, 109 Ct.Cl. 33.

The last services for which plaintiff claims Sunday and holiday compensation were rendered in 1939; no part of his claim accrued after that date. From the time the services were rendered, plaintiff had a cause of action; the law was the same then as it was after the decision in the Myers case. Myers sued while plaintiff slumbered. The Act of June 3, 1944, was, in part, a legislative interpretation of the Customs Overtime Act of February 13, 1911, supra, adopting and extending (as to highways) the Supreme Court's interpretation of the same Act and relieving the owners of inland toll facilities from payment of customs overtime fees. It authorized the Treasury to pay customs officers extra compensation without collecting reimbursement therefor, but did not create any new cause of action. The Sunday and holiday compensation had been payable all along, but no one before Myers had pursued the matter to a final judicial determination. The new Act stated more clearly what the law was, but it did not revive claims barred by the statute of limitations, for it did not create a new cause of action. See Grant v. United States, 41 F.2d 863, 70 Ct.Cl. 294 and Caudle v. United States, 72 Ct.Cl. 331.

The cause of action upon which plaintiff sues having accrued no later than 1939, and more than six years having elapsed between that date and the date of plaintiff's petition herein, the motion of the defendant to dismiss the petition because of the bar of the statute of limitations is granted, and plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.