## UNITED STATES *v.* MITCHELL.

APPEAL FROM THE COURT OF CLAIMS.

Submitted March 30th, 1883.—Decided November 5th, 1883.

*Interpreter—Salary—Statute.*

The Revised Statutes fix the annual salary of an interpreter at four hundred dollars. In 1877 Congress appropriated in gross for such offices " at three

hundred dollars per annum," and repeated the appropriation in like form down to and including the appropriation act of March 3d, 1881. A served as such interpreter from July, 1878, to November, 1882, and was paid at the rate of $300 per annum. In a suit to recover at the rate fixed by the Revised Statutes: *Held,* that Congress had expressed its purpose to reduce for the time being the salaries of interpreters, and that the claimant could not recover.

This was a suit by the appellee, Charles Mitchell, to recover a balance which he claimed to be due him as Indian interpreter at the Santee agency in the State of Nebraska, under section 2070, title XXIII., of the Revised Statutes.

That section, and section 2076, which constitutes part of the same title, and also relates to the compensation of interpreters, are as follows:

SEC. 2070. "The salaries of interpreters lawfully employed in the service of the United States in Oregon, Utah, and New Mexico, shall be five hundred dollars a year each, and of all so employed elsewhere, four hundred dollars a year each."

SEC. 2076. "The several compensations prescribed by this title shall be in full of all emoluments and allowances whatsoever."

It appeared from the findings of the court of claims that the appellee was an interpreter at the Santee Indian agency in the State of Nebraska, duly appointed under section 2068 of the Revised Statutes, and that he held the office and discharged its duties for several periods between July 1st, 1878, and November 22d, 1882, his whole term of service amounting to three years and seven months.

During all this time, instead of the salary of $400 per annum, as provided in section 2070, he was paid only at the rate of $300 per annum, for which he gave a receipt in full for his services, Congress having appropriated that sum only for his yearly compensation during his term of service.

The appellee, contending that he was entitled to a salary at the rate of $400 per annum, brought this suit to recover the difference between his salary at that rate and the sum which he was actually paid. The court of claims rendered judgment in his favor for $353.33; from which the United States appealed.

*Mr. Assistant-Attorney-General Simons* and *Mr. John S. Blair* for the United States.

*Mr. George A. King* for the appellee.

Mr. JUSTICE WOODS delivered the opinion of the court.

It is contended on behalf of the United States that, by the appropriation acts which cover the period for which the appellee claims compensation, Congress expressed its purpose to suspend the operation of section 2070 of the Revised Statutes, and to reduce for that period the salaries of the appellee and other interpreters of the same class from $400 to $300 per annum. We think this contention is well founded.

The law fixing the salaries of interpreters, as found in section 2070 of the Revised Statutes, was first passed in the Indian appropriation act of February 27, 1851, 9 Stat. 587. That act appropriated a gross sum for the pay of interpreters authorized by the act of June 30, 1834, 9 Stat. 735, and declared that the salaries of interpreters employed in certain named Territories should be $500, and in all others $400 per annum. From the passage of that act down to the passage of the Indian appropriation act of March 3, 1877, 19 Stat. 271, the appropriations for the salaries of interpreters were made at those rates. The act last mentioned specifically appropriated for the pay of Indian interpreters the uniform sum of $300 each. This course of legislation was continued for five consecutive years, until the passage of the Indian appropriation act of May 17, 1882, 22 Stat. 68, which appropriated the gross sum of $20,000 for the payment of necessary interpreters, to be distributed in the discretion of the Secretary of the Interior, and repealed section 2070 of the Revised Statutes. A like appropriation was made in the same terms by the Indian appropriation act of March 1, 1883. 22 Stat. 433.

An examination of this legislation, especially of the Indian appropriation acts, beginning with that of March 3, 1877, down to and including the act of March 3, 1881, which are all similar in their provisions, will clearly reveal the purpose of Congress. The act of March 3, 1877, opens with this provision:

"That the following sums be, and they are hereby appropri-

ated . . . for the purpose of paying the current and contingent expenses of the Indian Department and fulfilling treaty stipulations with the various tribes." . . .

Then follow the specific appropriations, and among them the following :

"For the pay of seventy-six interpreters, as follows : . . . Seven for the tribes in Nebraska, to be assigned to such agencies as the Secretary of the Interior may direct, at three hundred dollars per annum, two thousand one hundred dollars."

After the specific appropriation for salaries of interpreters the following clause appears :

"For additional pay of said interpreters, to be distributed in the discretion of the Secretary of the Interior, six thousand dollars."

All the subsequent Indian appropriation acts, down to and including the act of March 3, 1881, make in the same language the same appropriation for salaries of interpreters, and contain a similar clause for their additional compensation.

We find, therefore, this state of legislation. By the Revised Statutes the salaries of interpreters were fixed, some at $400, and some at $500 per annum, with a provision that such compensation should be in full of all emoluments and allowances whatsoever.

By the acts in force during the appellee's term of service the appropriation for the annual pay of interpreters was $300 each, and a large sum was set apart for their additional compensation, to be distributed by the Secretary of the Interior at his discretion.

This course of legislation, which was persisted in for five years, distinctly reveals a change in the policy of Congress on this subject, namely, that instead of establishing a salary for interpreters at a fixed amount, and cutting off all other emoluments and allowances, Congress intended to reduce the salaries and place a fund at the disposal of the Secretary of the In-

terior, from which, at his discretion, additional emoluments and allowances might be given to the interpreters. The purpose of Congress to suspend the law fixing the salaries of interpreters in Nebraska at $400 per annum, is just as clear as its purpose to suspend the section forbidding any further emoluments and allowances. Our opinion is, therefore, that the intention of Congress to fix, by the appropriation acts to which we have called attention, the annual salaries of interpreters for the time covered by those acts at $300 each, is plain upon the face of the statute.

The whole question depends on the intention of Congress as expressed in the statutes. Whether a simple failure by Congress to appropriate any or a sufficient sum to pay the salary of an officer fixed by previous law is of itself an expression of purpose by Congress to reduce the salary, we do not now decide. That is not this case. On the contrary, in this case Congress has in other ways expressed its purpose to reduce, for the time being, the salaries of the interpreters.

This purpose is of course irreconcilable with the provisions of the Revised Statutes on the same subject, and those provisions must be considered as having been suspended until they were finally repealed by the act of May 17, 1882. As the appellee has been paid in full his salary, as fixed by the later acts which were in force before and during and continued in force after his term of service, he has no cause of action against the United States. It follows that the judgment of the Court of Claims in his favor must be reversed,

*And it is so ordered.*