Bichardson, Ch. J.,
delivered the opinion of the court:
The claimant was appointed and served as consul-general at Borne from August 30,1884, to June 10,1885, and has been paid at the rate of $2,000 a year and no more.
His claim is that the salary of the office was $3,000 a year, as fixed by the act of January 27,1879, chapter 28, appropriating that sum for one year, and establishing the amounts appropriated as the annual salaries of the officers therein named after July 1,1879. (1 Supp. Bev. Stat., 397,398,401, notes.) He sues for the difference between the amount received and the amount so claimed.
*63 For the year ending June 30,1885, during which time the claimant held office, the annual consular and diplomatic appropriation act appropriated $2,000 for the salary of the consul-general at Borne (23 Stat. L., 229), and the proper proportion of that sum for the time of his service he has received.
In the Langston Case (118 U. S. R., 389), affirming the judgment of this court (21 C. Cls. R., 10), the Supreme Court say that “according to the settled rules of interpretation, a statute fixing an annual salary of a public officer at a named sum, without limitation as to time, should not be deemed abrogated or suspended by subsequent enactments which merely appropriated a less amount for the services of that officer for particular years, and which contained no words that expressly or by dear implication modified or repealed the previous law.”
In the present case there is no express repeal, by the appropriation act of 1881, of the salary established by the act of 1879; but express repeal is not the only way by which the intention and will of Congress to change existing laws may be enacted. In the same case of Langston the Supreme Court refer with approval to the Mitchell Case (109 U. S. R., 146), wherein they held that the course of legislation distinctly revealed a change of policy on the subject of the salary there in question, by which Congress had expressed its purpose for the time being to reduce the salary.
In our opinion, the course of legislation, taken in connection with the action of the Executive, in relation to a consulate at Rome and the performance of the duties of such office, clearly shows that it was the intention of Congress, as expressed in the appropriation act of 1881, before cited, to allow but $2,000 as the compensation of a consul-general at the place for the year during which the claimant held the office.
It has been claimed by the Executive, in accordance with the opinion of Attorney-General Cushing, that by the Constitution to the Executive alone is granted the power to appoint diplomatic agents of any rank or title, at any time, and at any place, and upon the exercise of this power Congress can place no extension or limitation, by undertaking either to create, abolish, or change the character, title, or rank of officers. On the other hand, to the legislative branch of the Government alone is granted the power to provide for the compensation of those, as well as of all other public officers, and this it may do in such *64 manner as it deems best, or may withhold all compensation whenever it sees fit to do so. During the whole of the administration of President Jefferson, and part of the terms of other early Presidents, Congress annually apppropriated a sum in gross “ for the expenses of intercourse with foreign nations, leaving it to the Executive to fix the salaries of its several appointees. In some cases appropriations have been made for particular officers not to exceed the sums named, still leaving to the Executive a discretion to deternine the amounts to be paid. (7 Op. Att’ys Gen., 186.)
When Congress, by inadvertence orotherwise, has used language in legislative enactments which appeared to encroach upon the constitutional prerogative claimed by the Executive in the establishment of diplomatic agents abroad, it has, once at least, been met with dignified expressions of exception or protest, while the wishes of Congress, even thus expressed, have generally, perhaps always, been adopted and followed.
, The Appropriation Act of August 15, 1876 (19 Stat. L., 170, 175), required the Secretary of State to send notice to all diplomatic and consular officers for whom no salaries were appropriated therein u to close their offices.” President Grant attached his approval to the bill, but sent a special message to the House of Bepresentatives in which'he said :
u * # # in the literal sense of this direction it would be an invasion of the constitutional prerogative and duty of the Executive. * * * In calling attention to the passage which I have indicated, I assume that the intention of the provision is only to exercise the constitutional prerogative of Congress over the expenditures of the Government and to fix a time at which the compensation of certain diplomatic and consular officers shall cease, and not to invade the constitutional rights of the Executive, which I should be compelled to resist; and my present object is not to discuss or .dispute the wisdom of failing to appropriate for several offices, but to guard against a construction that might possibly be placed on the language used as implying a right in the legislative branch to direct the closing or discontinuing of any of the diplomatic or consular offices of the Government. (Ex. Doc. No. 192, 44th Cong., 1st sess.)
These considerations are instructive, and have an important bearing upon the question now under consideration, whether the position taken by the Executive be tenable or not. (United States v. Maurice, 2 Brock., 100.)
*65 For some years prior to July 1,1882, there had been a secretary of legation to Italy and a consul-general at Borne, and Congress had annually appropriated $1,800 a year for the former and $3,000 a year for the latter, and these amounts were made the standing salaries for those officers. (Supp. Bev. Stat., 331, note, and 307, note.)
But the Forty-seventh Congress, apparently for the purpose of economy, appropriated for “a consul-general and secretary of legation at Borne” $3,500 for the fiscal year ending June 30,. 1883 (22 Stat. L., 129), and made no provision for the service by separate officers.
Thereupon the Executive, conforming to what seemed to be the wish of Congress, duly appointed “a secretary of legation and consul-general at Borne,” and the former separate aiid distinct offices, being thus superseded, ceased to exist. For the next succeeding year a similar appropriation was made (22 Stat. L., 425), and the officer was continued under the same appellation.
This combination of offices gave rise to some embarrassment to the Executive. In consequence of the hesitation of the Italian Government to recognize an officer of the dual capacity of secretary of legation and consul-general, the appointee, with the approval of the Department of State, acted only as secretary of legation, the duties of consul-general devolving upon the deputy, although the secretary received the full pay of $3,500 a year.
The Forty-eighth Congress, by the Act of July 7,1884, chapter 333 (23 Stat. L., 227, 228,229), again changed the form of appropriation, and provided for the salary of a secretary of legation to Italy at $1,800 a year, and the salary of a consul-general at Borne at $2,000 a year, being $300 a year more than had been given to the combined offices during the two preceding years, but still $1,000 a year less than had formerly been appropriated.
The Executive, again conforming to the wishes of Congress, duly appointed a secretary of legation to Italy and a consul-general at Borne, superseding the combined office, which thereupon ceased to exist.
The claimant was the appointee to the office of consul-general at Borne. His commission bears date July 5, 1884 (the *66 date of confirmation by tlie Senate), two days before the approval of the appropriation act, but his appointment was evidently made in anticipation of the passage of that act, and was not forwarded to him until some time thereafter. With his commission he received a notice from the Secretary of .State that “the salary of the office has been fixed at $2,000 per an-num.”
These facts sufficiently indicate such changes of policy on the part of Congress, adopted as they were by the Executive, as to supersede the provision of the act of January 27, 1879, chapter 28, fixing the salary, which the claimant relies upon. No such office as that to which he was appointed had existed for two years previously to the time when he received his commission, and then it was in point of fact a new office, created by the Executive by constitutional authority, and under circumstances which had changed materially since the passage of the act of 1879. Congress had expressed its willingness to provide the means to pay for a consul-general at Rome for one year at $2,000. The Executive, acting upou this legislation, appointed the claimant and gave him notice that his salary was fixed at that amount, thus showing that the appointment, which was wholly within the discretion of the Executive to make or not to make, was in point of fact made in connection with and with reference to the then recent act of Congress appropriating the salary, not with reference to the act of 1879.
There is nothing in these views in conflict with the principle to which we held in Mitehell's Vase (18 C. Cls. R., 181), cited by the claimant’s counsel, that where a salary is clearly fixed by statute, a receipt given by the incumbent to a paym aster for part of the amount in full payment and discharge of the whole does not estop him from recovering the balance unpaid. The two cases are entirely different. The notice given to claimant by the Secretary of State of the amount of the salary and his acceptance of the office therewith are not referred to as an estoppel, nor as constituting a binding contract, but to show the circumstances under which he was appointed, in connection with the policy indicated by Congress in the most recent act.
Concisely stated, Congress fixed the salary of an office constitutionally established by the Executive. Two years after *67 the office had been superseded and abolished, Congress appropriated a less sum as the salary for one year of a like office.
On account of that appropriation the Executive established the office again and appointed the claimant thereto, with notice' of the amount of his salary, thus connecting his appointment directly with the appropriation act and disconnecting it entirely from the act of 1879 establishing a larger salary for an office which had been superseded.
The claimant has no cause of action. His petition must be ■dismissed.
Nott, J., concurred in the conclusion.