JoNns, Chief Judge,
delivered the opinion of the court:
During the Government’s fiscal year 1948, the period beginning July 1,1947, and ending June 30,1948, plaintiff was an inspector in the Immigration and Naturalization Service of the United States. The Act of March 2, 1931, 46 Stat. *48 1467, 8 U. S. C. 109, et seq., provided that such employees should be paid, for work beyond an eight-hour day on ordinary days, one-half day’s additional pay for each two hours or major fraction thereof, and, for work on a Sunday or holiday, two additional days’ pay. See Myers v. United States, 320 U. S. 561, for the interpretation of a similar statute, applying to Customs Inspectors. In 1945 Congress passed the first permanent legislation extending to federal employees generally the benefits of premium pay for overtime,[1] holiday,[2] and night[3] duty; 59 Stat. 295 as amended, 60 Stat. 216, 5 U. S. C. 901, et seq., hereinafter referred to as the 1945 act. The provisions of this act were not as liberal to other Government employees as were those of the 1931 act which related only to Immigration Inspectors. But the 1945 act expressly provided:
The provisions of this Act shall not operate to prevent payment for overtime services or extra pay for Sunday or holiday work in accordance with any of the following statutes: * * * Act of March 2, 1931, * * *: 'Provided, That the overtime, Sunday or holiday services covered by such payment shall not also form a basis for overtime or extra pay under this Act.[4]
The 1945 act did not, then, relegate Immigration Inspectors such as the plaintiff to the less liberal premium pay provisions made for most Government employees by that act. See O’Rourke v. United States, 109 C. Cls. 33, for an application of the same saving clause in the 1945 act to cases of Customs Inspectors.
When the State, Justice, and Commerce Departments Appropriation bill for the fiscal year 1948 was being considered by the Senate on June 30, 1947, Senator Ball proposed the following amendment from the floor (93 Cong. Bee. 7897) :
* * * after the word “Provided”, it is proposed to insert the following:
That none of the funds appropriated for the Immigration and Naturalization Service shall be used to pay compensation for overtime services other than as pro *49 vided in the Federal Employees Pay Act of 1945' (Public Law 106,79th Cong., 1st sess.), and the Federal Employees Pay Act of 1946 (Public Law 390, 79th Cong., 2d sess.) :

Provided further,

He then made the following statement concerning the proposed amendment:
Mr. President, the amendment is necessary as the result of recent court decisions which require the Immigration and Naturalization Service under a law, the repeal of which is now being considered by the proper legislative committee, to pay employees of that service, immigration inspectors, who work on Sunday, three days pay for that day, instead of the normal time and a half which is paid to other employees. It is a terrifically expensive item for the departments. At all the ports of entry inspectors must be maintained on Sunday.
The 1948 Appropriation Bill as enacted contained the amendment offered by Senator Ball, without change. We have quoted all that was said or written about it at the time it was enacted.
Shortly after its enactment the Attorney General, in whose department the Immigration Service was, asked the Comptroller General for instructions on how to apply the proviso contained in Senator Ball’s amendment.
The Comptroller General’s reply is found in 27 C. G. 102. We quote the pertinent questions asked and the Comptroller General’s response:
1. Does the above-quoted proviso have the effect of repealing the Act of March 2, 1931, as amended (8 TJ. S. C. 109 (a), (b), and (c))?
* * :¡: * *
4. Does the proviso in question have the effect of restricting:
(a) Only the appropriation for the fiscal year 1948?
(b) The appropriation for 1947 and prior fiscal years, where payment for overtime services performed by employees has not yet been made?
❖ ifc * * ❖
There is nothing in the wording of the proviso contained in the Departments of State, Justice, and Commerce, and the Judiciary Appropriation Act, 1948, Public Law 166, 61 Stat. 292, quoted in your letter, or *50 in its legislative history, which would warrant a conclusion that it was intended to effect the repeal of the above-quoted codified provisions of the act of March 2, 1931, as amended; rather, the effect of the proviso is to suspend temporarily the extra compensation for overtime service provisions of the said act and to substitute therefor, during the effective period of the proviso, the pertinent provisions of the Federal Employees Pav Acts of 1945, 59 Stat. 296, and 1946,60 Stat. 2lt. * *
With respect to your fourth question, there is nothing in the legislative history of the proviso, or otherwise, indicating an intention on the part of the Congress that the proviso should be considered applicable to funds other than those appropriated for the Immigration and Naturalization Service by the act of July 9,1947. _
_ In the light of the factual circumstances, no objection will be interposed by this office to a continuation of the existing administrative definition of “time on duty” in connection with cases in which liability for payment of compensation for overtime attaches to carriers under the provisions of the act of March 2, 1931, as amended.
The Immigration Service continued to collect from the carriers the amounts provided in the 1931 Act, but did not pay the inspectors premium pay thus collected during the period of the operation of the 1948 Appropriation Act. Plaintiff sues for the difference between the premium pay which he was paid, and what he would have been paid under the 1931 act. The proviso attached to the 1948 Appropriation Act was not repeated in the 1949 act, hence we are concerned only with the plaintiff’s pay during the fiscal year 1948, or out of the appropriation for that year.
The plaintiff urges that the Ball proviso in saying that Immigration Service Employees should not be paid for overtime services “other than as provided in the” 1945 act should be interpreted as meaning that they should be paid according to the 1931 act, since the 1945 act expressly states in its Section 601 that it should not prevent payments in accordance with the 1931 act.
. We agree with this interpretation. The Ball proviso was |a mere limitation on the expenditure of a particular fund ‘¡and had no other effect. For more than half a century according to the rules and the practice prevailing in the Congress, a pure limitation on an appropriation bill does not *51 have the effect of either repealing or even suspending an existing statutory obligation any more than the failure to pay a note in the year in which it was due would cancel the obligation stipulated in the note. There were many debates in the Congress as to whether the wording of a restriction was such that it constituted either a repeal or a temporary suspension of the existing legislative act or the obligation which it embodied. If so, it was subject to being stricken from the bill on a point of order by any member. Frequently, of course, under the guise of a limitation, a member would undertake to hide a provision which would also suspend or repeal the obligation, but the uniform rule was that if it were simply a withholding of funds and not a legislative provision under the guise of a withholding of funds it had no effect whatever on the legal obligation. The usual form of a simple limitation was that none of the funds provided should be used for a specific purpose — naming the purpose. I know of no departure from this rule in the enactment of legislation in the history of the Government.
The courts have also uniformly followed this interpretation. Naturally they have had their difficulties in determining whether a limitation on the use of funds had embodied in it also a repeal or temporary suspension of the legal obligation or statutory right. In the case of Andrew Geddes v. United States, 88 C. Cls. 428, 444, this specific question was discussed. There was a proviso in the bill involved that no part of the money therein appropriated should be paid as additional salary or compensation to any person who was at the same time receiving other compensation as an officer or employee of the Government. It involved the question of additional pay for a retired army officer for additional services which he rendered. It will be recalled that those in the military service are exempted from the inhibition against holding two positions of emolument at the same time. In commenting upon this question the court used the following language:
That limitation upon the power of the Secretary does not constitute a defense. An appropriation is the setting-aside by Congress of a designated amount of public money for a designated purpose.
*52 “No money shall be drawn from the Treasury but in consequence of appropriations made by law.” (Const., Art. I, sec. 9.)
The accounting officers are the guardians of the appropriations. It is their business to see that no money is paid out of the Treasury unless the payment is authorized by an appropriation act. It is not their business to adjudicate abstract questions of legal right beyond the legal right of a person to be paid out of a specific appropriation. An appropriation constitutes the means for discharging the legal debts of the Government.
The judgment of a court has nothing to do with the means — with the remedy for satisfying a judgment. It is the business of courts to render judgments, leaving to Congress and the executive officers the duty of satisfying them. Neither is a public officer’s right to his legal salary dependent upon an appropriation to pay it. Whether it is to be paid out of one appropriation or out of another; whether Congress appropriate an insufficient amount, or a sufficient amount, or nothing at all, are questions which are vital for the accounting officers, but which do not enter into the consideration of a case in the courts. This has been repeatedly held by the Supreme Court and this court, beginning with Graham's Gase, in the first volume of the Reports. (1 C. Cls. R., 380). The appropriations made for all the Executive Departments, except that of the Department of Agriculture, are specific — so much for this object, so much for that. But it has been the legislative practice for some years to appropriate gross amounts for the Department of Agriculture, and at the same time to append the above limitation upon the power of the Secretary. The judgment of this court will not be paid out of that appropriation; the limitation upon the power of the Secretary does not extend to the court; the real question before the court is that of the claimant’s legal right to receive the pay of both offices, irrespective of the statutes above quoted. All these questions were considered in Collins's Case (15 C. Cls. R., 22), and are there exhaustively treated.
United States v. Pitman, 147 U. S. 669; Erwin v. United States, 37 Fed. 470; United States v. Aldrich, 58 Fed. 688.
Attention is called to the case of United States v. Dickerson, 310 U. S. 554, in which the Supreme Court construed a provision in an appropriation bill as having the effect of preventing a soldier, during the period when appropriations were not made, from receiving the bonus for reenlistment. *53 However, in that case, beginning with the year 1933, there had been carried in each appropriation bill for four years a provision suspending the payment of bonuses for reenlistment. In the appropriation bills for 1938 and 1939 the wording of the provision had been changed, but it was still worded in such a way as to carry the implication of the suspension of that part of the act which provided for the payment of bonuses. In view of the peculiar wording of the limitation, the fact that it had been carried for years and the explanation of its purpose as made on the floor of the Senate, the court held that it was not strictly a limitation on the use of funds for the year, but carried a temporary suspension of the legislative authorization.
We know of no case in which any of the courts have held that a simple limitation on an appropriation bill of the use of funds has been held to suspend a statutory obligation. In fact, we believe a careful reading of the Comptroller General’s ruling will disclose that he is in accord with this interpretation.
However, it is not necessary in this case to rest the decision upon this point alone, since the Ball amendment did not even purport to limit the funds in the appropriation bill in such a way as to prevent the payment of extra compensation for overtime, holiday, or Sunday work of immigration inspectors. It should be noted that the Ball proviso forbade the use of the funds to pay “overtime services other than as provided in the Federal Employees Pay Act of 1945.” Section 601 of the 1945 act contained the following proviso:
The provisions of this Act shall not operate to prevent payment for overtime services or extra fay for Stmday or holiday work in accordance with any of the following statutes: * * * Act March 2nd, 1931 * * *. [Italics ours.]
Thus clearly Senator Ball’s amendment, as worded, did not prevent the premium payment to immigration inspectors under the terms of the Act of March 2,1931, which is the act under which this suit is brought. We must take what the proviso says and not what one member of a great body might have been under the impression it contained. This is especially true of amendments offered from the floor that are not *54 made tbe subject of committee study and report. If the meaning of the act is not plain, committee reports and finally statements made in debate may be considered. Penn Ry. Co. v. International Coal Co., 230 U. S. 184, 199; United States v. Freight Assn., 166 U. S. 290, 318.
As a matter of fact, Senator Ball’s later explanation shows that he was acting under a mistaken impression. He believed that the legislative act permitted certain employees to get three days’ pay for one day’s service on Sundays and holidays. This was a natural mistake, since the act was somewhat ambiguously worded and stated specifically that on Sundays they should receive two days’ extra pay, and this court had specifically held in the case of Myers v. United States, 99 C. Cls., 158, that this was true. The Supreme Court had reversed the decision of this court and held that the three days was not applicable and that they were only entitled to double pay for Sundays and holidays, and time and a half for overtime.
The only reason given by Senator Ball — in fact, the only statement made on the floor of the Senate at the time of the consideration of the amendment — was the one in which he used the language heretofore quoted which shows he was trying to prevent what he thought was three days’ pay for one day’s Sunday work. His explanation clearly shows that he was laboring under a mistaken impression, and the following year he acknowledged that he had been misinformed. When the appropriation bill for 1949 was under consideration the following colloquy occurred on the floor of the Senate:
Senator Ball. Your information is wrong on how the rider got in. It got in because the Bureau sent it up here and asked me to put it in on the floor, which I did, on the proposition that these employees were getting 3 days’ pay for Sunday overtime work, particularly for work on Sundays or holidays.
Since then, according to the information I get from the employees, they tell me that they never got 3 days’ overtime. They got double time on Sunday.
Mr. Miller. This is my information, also, Senator.
It is to Senator Ball’s credit that he was willing to make this frank admission.
*55 Manifestly immigration and customs officers were placed in a different classification by the Congress, due to the peculiar nature of their services. They received no extra pay for overtime of less than one hour, and in several respects were on a different basis of classification from other employees. At any rate, Congress saw fit to put them in a special class and to make special provision for their pay.
Thus, if we give the proviso offered by Senator Ball and adopted by the Congress its broadest possible meaning and its fullest effect, it does not even purport to affect the right of immigration inspectors to overtime pay as provided in the 1931 act, notwithstanding the Senator was apparently under the impression that it did so. The language being clear we are not permitted to alter its effect by accepting what he may have had in mind when he offered it. The provisions were given further emphasis by the .acknowledgment the following year that- he had been laboring under a mistaken impression. The Senator was evidently .mistaken not only as to the situation he sought to remedy, but his amendment was so worded as not to cover the immigration inspectors who were specifically exempted from the limitation provided in the 1945 Act.
The plaintiff is entitled to recover. Entry of judgment is suspended pending receipt of a report from the General Accounting Office showing the amount due plaintiff in accordance with this opinion.
Howell, Judge; and LittletoN, Judge, concur.

 59 stat. 295, See. 201, 5 U. S. C. 911.

 59 Stat. 295, Sec. 302, as amended by the Act of May 24, 1946, 60 Stat. 216, Sec. 11, 5 U. S. C. 922.

 59 Stat. 295, Sec. 301, 5 U. S. C. 921.

 59 Stat. 295, Sec. 601, 5 U. S. C. 941.